**HEARTLAND HEALTH SYSTEMS, INC., Appellant,**

v.

**Andrew L. CHAMBERLIN and Iola Chamberlin, Respondents.**

**HEARTLAND HEALTH SYSTEMS, INC., Respondent,**

v.

**Andrew L. CHAMBERLIN and Iola Chamberlin, Appellants.**

**Nos. WD 47074, WD 47079.**

Missouri Court of Appeals, Western District.

Dec. 7, 1993.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 1, 1994.

Application to Transfer Denied March 22, 1994.

Kimberly L. Loving, St. Joseph, for appellant/respondent.

Roy W. Brown, Kearney, for respondent/appellant.

Before BRECKENRIDGE, P.J., and KENNEDY and LOWENSTEIN, JJ.

KENNEDY, Judge.

The trial court, after a bench trial, gave judgment in favor of Iola Chamberlin in Heartland Health Systems, Inc.'s suit against her and her son, Andrew L. Chamberlin, for $8545.25 and prejudgment interest at nine percent per annum from and after February 3, 1990. The sum sued for was for hospital services rendered to Andrew. Heartland has appealed the adverse judgment in its claim against Mrs. Chamberlin.

The trial court also gave judgment in favor of Heartland against Andrew on the account, and Andrew has appealed.

For reasons we will explain, we reverse the judgment against Heartland and in favor of Mrs. Chamberlin, and affirm the judgment in favor of Heartland and against Andrew.

The facts are these:

Andrew, an 18–year–old high school senior was involved in an automobile accident on the morning of January 31, 1990. He was taken by ambulance to Heartland Hospital in St. Joseph. He was unconscious. He had a compound fracture of the elbow, cuts on his face, and bruised knees.

Iola Chamberlin, Andrew's mother, signed a printed form which was presented to her, entitled "Admission and Outpatient Consent Form." She did not read the form. Unknown to her, the document contained an express promise to pay the hospital charges. Mrs. Chamberlin did not understand that she was obligating herself to pay Andrew's hospital bill, and would not have signed it if she had read it. Explaining her signing of the form she said, "... I signed where she told me to sign, so they would give him medical treatment because he needed it because he was bleeding out of his ears, out of his mouth, the bone out of his elbow was sticking out through the skin." At another point she said, "[m]y son was laying there bleeding out of his ears. He needed medical attention, so I signed it."

Our review of a court tried case is governed by Rule 73.01(c) and *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). Thus, we will affirm the judgment of the trial court unless there is no evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d at 32. In addition, this court notes that our primary concern is the correctness of the trial court's result, not the route taken to reach it. *Smith v. Estate of Harrison*, 829 S.W.2d 70, 73 (Mo.App.1992) (citing *Kopp v. Franks*, 792 S.W.2d 413, 419 (Mo.App.1990)).

In this case, there is no dispute about the facts. The question is whether the trial court has rendered the right judgment in holding that Mrs. Chamberlin was not bound by the provisions of the agreement which she had signed. We hold judgment of the court erroneously applied the law.

The general rule is that a person is bound by the terms of a contract he signs. He will not be heard to say he was ignorant of its contents, and is therefore not bound by its provisions. *Taylor & Martin, Inc. v. Hiland Dairy, Inc.*, 676 S.W.2d 859, 871–872 (Mo.App.1984); *United States for use of Bussen Quarries, Inc. v. Thomas*, 938 F.2d 831, 833–34 (8th Cir.1991). There are equitable considerations, however, which sometimes give relief to the person who has signed a written contract.[1]

Mrs. Chamberlin attempts to bring herself within the "contract of adhesion" exception. That rule holds that a party to a written contract is not bound by the terms of

---

1. *See Motor Transp. Springfield v. Orval Davis Tire Co.*, 585 S.W.2d 195 (Mo.App.1979), where the contract signer claimed fraud by the other party, and claimed mutual mistake.

a contract of adhesion which are outside and beyond the reasonable expectations of the person signing the contract. The reasonable expectations of the parties are gathered not only by the words of the supposed contract, but by all the circumstances of the transaction. A contract of adhesion is a written contract, usually printed in boilerplate language, prepared by the stronger party and presented to the weaker on a take it or leave it basis. It is sold as a product; its terms are not negotiated between two contracting parties.[2]

There is nothing in the adhesion contract rule that relieves Mrs. Chamberlin of the terms of the contract she signed. One can gather she was hurried and under stress. She did not take the time to read the contract. That was no fault of the hospital. There was no duress; there was no fraud practiced upon Mrs. Chamberlin. The hospital was within its rights to require some responsible person to sign an agreement to pay before it rendered its services. It could withhold its services unless and until Mrs. Chamberlin signed the agreement. It is useless to speculate whether it would have done so, just as it is useless to speculate whether Mrs. Chamberlin would have signed the agreement, knowing she was obligating herself to pay the hospital bill, if the hospital had withheld its services to her son until she had so done. What can be said from the evidence is that the contract terms which obligate Mrs. Martin to pay the hospital bill are not contrary to the reasonable expectations of the parties to the contract. Of course, "reasonable expectations" are determined by an objective standard, *Heartland Computer*, 770 S.W.2d at 527. By an objective standard, "reasonable expectations" might or might not be what a party actually expected.

In holding Mrs. Chamberlin liable under her contract for Andrew's hospital services, we take into account the relationship of the parties—an unemancipated 18–year–old son and a mother. If a stranger brought an accident victim to the hospital, and signed a document whose terms, unnoticed by him, obligated him to pay the hospital bill, different considerations and different expectations would no doubt come into play if the hospital sought to hold him liable for the hospital bill.

Mrs. Chamberlin claims that, even if she is obligated for the hospital bill under her contract, which she denies, Heartland's proof was still deficient as to the necessity and the reasonable value of the various items of the hospital bill. This is the same argument put forward by Andrew in his appeal, and we will take it up in the following paragraphs. The trial court, in the case against Mrs. Chamberlin, did not reach the necessity and reasonable value of the services rendered to Andrew by the hospital.

Andrew Chamberlin appeals the judgment against himself in the hospital's quantum meruit claim. His argument, as set out in his point relied on, is that there is no showing "that each item of service or supply listed in the billing was necessary for the treatment of defendant in his particular situation." Andrew claims that, in the absence of such evidence, Heartland was not entitled to judgment against him for the hospital bill.

Heartland's financial representative testified that, as part of her duties, she was familiar with the customary charges in the medical industry for services of the same type as those rendered to Andrew. She testified that Heartland's charges for the services rendered to Andrew were reasonable and customary. This was sufficient in this case. It was not necessary, as Andrew claims, for the hospital to prove by expert testimony that each particular item was necessary to Andrew's treatment. Andrew did not challenge any particular item or items as being unnecessary. Of course, the need for hospital treatment for his condition was obvious, and was acknowledged both by Mrs. Chamberlin and by Andrew. In this state of the record, Heartland made a prima facie case for the necessity and the reasonable value of the services rendered, and the burden of challenging any particular item or items was upon the defendants.

2. See the instructive discussion of Judge Gaertner in *Heartland Computer Leasing Corp., Inc. v. Insurance Man, Inc.*, 770 S.W.2d 525, 526 (Mo. App.1989), and especially the landmark case of *Estrin Constr. Co., Inc. v. Aetna Casualty & Sur. Co.*, 612 S.W.2d 413 (Mo.App.1981).

Andrew's point is denied, and the judgment against him is affirmed.

We noted above that the court, in Mrs. Chamberlin's case, did not reach the necessity and reasonable value of the hospital services rendered to Andrew. Should we remand the case against Mrs. Chamberlin for the court to make a determination on that point? We think that is unnecessary. The evidence was heard by the court in the same trial, and the court determined in Andrew's case that the hospital services were necessary and their reasonable value was the amount claimed by the hospital. We can apply this finding by the court in the case against Mrs. Chamberlin, and direct the entry of a judgment against Mrs. Chamberlin for the same amount as the amount of the judgment against Andrew.

Judgment against Andrew L. Chamberlin affirmed. Judgment in Heartland's claim against Iola Chamberlin reversed, and cause remanded for the entry of a judgment in accordance with the foregoing opinion.

All concur.