Christie OSBORNE (Palma), Respondent,

v.

Garold F. OSBORNE, Appellant.

No. WD 54285.

Missouri Court of Appeals,
Western District.

Oct. 27, 1998.

As Modified Nov. 24, 1998.

---

Lauri J. Laughland, Grandview, for Appellant.

James T. Cook, Kansas City, for Respondent.

Before ULRICH, C.J., and LOWENSTEIN and HOWARD, JJ.

LOWENSTEIN, Judge.

Following a two day trial and entry of a decree of dissolution, the husband, Garold Osborne (Husband) has appealed and presented eight points for consideration. Christie Osborne (now Palma), the respondent (Wife), and Husband had a tempestuous marriage and separation including physical abuse of Wife, an incident where Wife was locked out of the house while unclothed, as well as suicide attempts, affairs and continuing financial problems stemming, in part, from a construction business the two operated. There was little or no unencumbered marital property to distribute, and the total

marital debt, a good part of which was owed to the Internal Revenue Service, was over $60,000.

The facts are further complicated by the ramifications of Husband's parents' (who are third-party respondents) efforts to help the couple financially. Two separate suits by the third-party respondents, one against Wife for eviction, and one against both Husband and Wife for recovery of money (some $30,000—$38,000) advanced to the couple, have been consolidated with this action. Also consolidated here is the Wife's suit against the third-party respondents for declaration of a trust relating to a piece of marital property.

■ The trial judge awarded Wife $750 a month in maintenance, $20,000 attorney's fees and the unimproved real property in Platte County, subject to her paying $6,107.21 to Husband's parents. Additional facts will be supplied in the discussion of Husband's points relied upon. Review is under *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). The burden for demonstrating error in the decree is on the party challenging the decree. *Woolridge v. Woolridge*, 915 S.W.2d 372, 375 (Mo.App.1996).

### I.

Husband states the trial judge erred by awarding Wife $750 per month in maintenance, based on his earnings and ability to pay. The parties were married in December 1985. This petition was filed October 1994. There were no children from this marriage, although Wife had custody of a child from a previous marriage. At the time of trial, Wife was working for Vanguard Airlines earning $7.25 per hour, resulting in a substantial monthly shortfall. Little or no property of

any value was divided. In this point, Husband seems to say the trial court erred in awarding maintenance, § 452.335.1, RSMo 1994, and alternatively, the award was excessive under the relevant factors under § 452.335.2.

The court's finding and judgment was correct. Under the threshold test of .1, Wife lacked sufficient property, including marital property, to provide for her reasonable needs. *Whitworth v. Whitworth*, 878 S.W.2d 479 (Mo.App.1994). Likewise, under the oft-enumerated factors of .2, set out in the footnote, the amount of maintenance awarded here was appropriate under the statute.[1] Wife, *alone* had made substantial payments on the parties' IRS tax obligations; Husband had paid nothing on this obligation. At the time of trial, Husband was living rent-free with his parents and also working either directly or indirectly for them for $20 an hour. His parents also supplied him with a truck for their construction work. Wife, who had a high school education, was attempting to be self-sufficient but was falling far short of that goal. She had been guilty of an extra marital affair, but sought to improve herself by setting a goal of attaining self-support by planning to go to nursing school. The court's maintenance award did not put her anywhere near paying her expenses, nor did it keep Husband from meeting his needs.

■ The trial court is given wide discretion in the award of maintenance. *Wallace v. Wallace*, 839 S.W.2d 354, 356 (Mo.App.1992). The court's decision to grant maintenance is affirmed. After considering the ten factors in .2, the award of $750 per month was not unreasonable, despite her extra-marital affair. Wife's reasonable needs exceeded her

1. 1.(1) The financial resources of the party seeking maintenance, including marital property apportioned to him, and his ability to meet his needs independently, including the extent to which a provision for support of a child living with the party includes a sum for that party as custodian;

(2) The time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment;

(3) The comparative earning capacity of each spouse;

(4) The standard of living established during the marriage;

(5) The obligations and assets, including the marital property apportioned to him and the separate property of each party;

(6) The duration of the marriage;

(7) The age, and the physical and emotional condition of the spouse seeking maintenance;

(8) The ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance;

(9) The conduct of the parties during the marriage; and

(10) Any other relevant factors.

ability to meet those needs. She had a high school education and a limited work history during the ten year marriage. There was no income producing property awarded to her to make up the difference, and Husband had the ability to pay the amount of the award. He had made $40,000 two years prior to the dissolution and $38,000 a year later, and as mentioned above, was making $20 per hour and living with his parents at the time of trial. *Monsees v. Monsees,* 908 S.W.2d 812, 817—18 (Mo.App.1995). Under the standard of review and in consideration of the statutory factors, this court cannot find from the record that the court abused its discretion on this point. *Allen v. Allen,* 927 S.W.2d 881, 889 (Mo.App.1996).

## II.

■ Husband, in two separate points, contends the award ordering him to pay $20,-000 of Wife's attorney's fees was unwarranted in view of the statutory factors, the parties' financial condition, and further, that the award includes attorney time spent on litigation not a part of the dissolution action. The applicable statutory language is contained in § 452.355.1. which reads:

1. The court from time to time after considering all relevant factors including the financial resources of both parties may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding under sections 452.300 to 452.415 and for attorney's fees, including sums for legal services rendered and costs incurred prior to the commencement of the proceeding or after entry of judgment. The court may order that the amount be paid directly to the attorney, who may enforce the other in his name.

The trial court has considerable discretion with regard to attorney's fees, the award is presumed correct and will be reversed only upon showing by the appellant of an abuse of discretion. *Lee v. Lee,* 967 S.W.2d 82, 87 (Mo.App.1998).

### A.

Husband's first argument against the fee award is that he got most of the debts, he has little in the way of assets, and he did not prolong the litigation (he says most of the trial was taken up with Wife's evidence). Citing *Kovacs v. Kovacs,* 869 S.W.2d 789, 794 (Mo.App.1994), Husband asserts, "Very unusual circumstances must exist for the Court to justify deviating from the general rule that each party bears his own litigation expenses." This court in *Ansevics v. Cashaw,* 881 S.W.2d 247, 251 (Mo.App.1994), and the Eastern District in *Burton v. Donahue,* 959 S.W.2d 946, 949 (Mo.App.1998), have rejected use of "the unusual circumstances standard," in determining an award of attorney's fees in domestic relations cases. In both these later decisions the court observed there is no mention of a requirement of "very unusual circumstances" contained in the statutory language of § 452.355.1. This point is rejected.

### B.

Husband's next argument states the $20,-000 fee award included attorney time spent on legal matters not related to the dissolution proceeding, and therefore the amount of the judgment is subject to appellate scrutiny. § 452.355.1., supra; *Hoover v. Hoover,* 892 S.W.2d 818, 819 (Mo.App.1995). Specifically, he states much of Wife's attorney's time was for her defense against the third-party suits (Husband's parents actually filed two suits, one for collection of debts owed by Husband and Wife to them, and one to evict Wife from the Grandview home), as well as for Wife's action against Husband's parents with regard to the Platte County property. As previously mentioned, the debt collection suit against Husband and Wife was dismissed the morning of this dissolution trial.

Additional facts are now in order. There are two parcels of real estate which are entwined in the disposition. One is a 2.7–acre unimproved lot in Platte County, the other is the Grandview home the couple resided in until their separation.

### PLATTE COUNTY PROPERTY

The Platte County property was deemed marital property. It was listed on Wife's forms as having a value of $40,000 or more, and was purchased by Wife for $22,500 prior to this marriage. She testified the property

had a value of $70,000. Husband testified the property was worth $24,000. His father gave an estimate of $25,000. The property was unimproved, and non-income producing. The real estate had been used as collateral to obtain loans to supply money to the couple's business. In order to obtain loans, the property was transferred to both Husband and Wife. In 1991–92 the Internal Revenue Service was attempting to levy on the Platte County site to satisfy unpaid payroll tax due from Husband and Wife's construction framing business. The land had an outstanding loan balance of $6,100.

In February 1992, the Platte County property, which by then was also subject to foreclosure for nonpayment of real estate taxes, was deeded by the couple to Husband's parents, the third-party respondents, who paid off the loan—the understanding was that as soon as things were cleared up with the Internal Revenue Service liability, and the $6,107 repaid to Husband's parents, the property would be deeded back to Husband and Wife. Not believed by the court was the assertion that Husband's father would be allowed to sell the property and keep the $30,000—$38,000 (see infra) owed him by Husband and Wife. The trial court found that, "due to the close personal business and financial involvement" between Wife, Husband, and the third-party respondents, "there was a confidential relationship" between them "wherefrom an oral agreement arose that title would be reconveyed" to Husband and Wife when they paid the $6,107, and Husband's parents held title "by way of a resulting trust." The court determined the property to be marital, and awarded it to the Wife upon her payment of $6,107 to third-party respondents.

## GRANDVIEW HOME

The other parcel of property is the Grandview home of Husband and Wife. The home was built in 1993 and is owned by the third-party respondent's construction company, which built the structure for the parties. Wife testified she and Husband spent considerable money in the construction, and contributed much in the nature of labor, or "sweat equity" all worth about $15,000. It

was contemplated, without benefit of a written contract, that as soon as the IRS difficulty was resolved, and the Husband and Wife could qualify for a loan, the title would be transferred to Husband and Wife. The parties paid the note payments, lived in the house until their separation in the Fall of 1994, after which Wife continued to live in the house while Husband made the payments. In July 1996, Husband's father filed the previously mentioned suit to evict Wife from the home; that suit has been consolidated here. The trial judge found neither Husband or Wife had any ownership interest in the Grandview house.

Also entering into the equation is the suit by Husband's parents against Husband and Wife for approximately $38,000 which was advanced to the couple. This is the amount allegedly loaned to Husband and Wife during the marriage to help their business, and is one of the two suits by third-party respondents which is consolidated here. This figure did not include the $6,100 paid by third-party respondents to satisfy the note on the Platte County land. As stated earlier, this suit was dropped on the first morning this dissolution case.

■ Telling as to this point is this statement from the Husband's brief: "The record is unclear as to what portion of the attorney's fees of Wife relates to the dissolution action and what portion relates to the actions brought by Third–Party Respondents...." Indeed, Wife's exhibit 49, a fee statement for time and expenses prior to trial totaled over $19,000. The attorney's fee statement is difficult to decipher, but the fee statement itself, and the testimonial evidence came in with no objection, and with no cross-examination by the Husband as to what may, or may not have been spent on any litigation not covered in § 452.355.1. Wife's testimony was she had paid a total of approximately $12,000 to her attorney, and at the time of trial she owed an additional $25,000, for all her legal expenses. From the record it appears $20,000 is for legal services rendered in the dissolution suit. Section 452.355.1. Husband failed to preserve the question of the proper amount of attorney time spent on legal matters cognizable under the statute

covering attorney's fees which may be awarded in a dissolution matter. Rule 84.13(a). Review is under plain error, Rule 84.13(c), which is granted sparingly, and is reserved for those cases where there appears to have been a manifest injustice or miscarriage of justice. *Messick v. Atchison, Topeka & Santa Fe Railway Company,* 924 S.W.2d 620, 621 (Mo.App.1996). Husband does not make the requisite showing entitling him to employ plain error review. Point denied.

## III.

The next point relates to the trial court's conclusion of a resulting trust in favor of Wife as to the Platte County property. The amended judgment found the close personal business and financial involvement between all the parties resulted in a confidential relationship from which an oral agreement arose so that third-party respondents would convey title to Wife upon her payment of $6,107.21. After proclaiming a resulting trust, the judgment declared the property as marital and awarded it to Wife when she paid the amount owing Husband's parents. Wife agrees the facts do not support declaration of a resulting trust in her favor, but states the facts here supported the conclusion of a constructive trust, and she seeks an affirmance on that basis. *Fix v. Fix,* 847 S.W.2d 762, 766 (Mo. banc 1993) (bench tried judgment which reaches the right result will not be set aside even if the wrong reason is given for judgment); *Heartland Health Systems, Inc. v. Chamberlin,* 871 S.W.2d 8, 10 (Mo.App.1993) (primary concern is the correctness of the trial court's result, not the route taken to reach it). Wife asserts she had asked for the Grandview property to be declared held in a resulting trust and for the Platte County title to be declared in a constructive trust, but the trial court in fashioning the judgment inadvertently used "resulting" instead of the intended "constructive" language for the Platte county property.

■ Generally, "a resulting trust is one implied by law from facts and conduct of the parties and the circumstances which attend the transaction out of which it arises". *Duncan v. Rayfield,* 698 S.W.2d 876, 879 (Mo.

App.1985). A resulting trust arises not from an agreement, but from "what the parties do and never from what they agree to do, and must arise at the time title passes, as no resulting trust is created by subsequent occurrences." *Locke v. Locke,* 901 S.W.2d 912, 915 (Mo.App.1995).

■ "A constructive trust is a method or formula used by a court of equity as a means of affecting restitution or of rectifying a situation, where, as a result of the violation of confidence or faith reposed in another, the plaintiff who seeks the aid of equity, has been wrongfully deprived of or lost title." *Imgrund v. LaRue,* 851 S.W.2d 40, 44 (Mo. App.1993) (citations and footnote omitted). In the opinion in *Crane v. Centerre Bank of Columbia,* 691 S.W.2d 423, 425 (Mo.App. 1985), this court set out the requirement which must be met by a plaintiff in establishing a constructive trust.

> Where the owner of an interest in land transfers it inter vivos to another upon an oral trust in favor of a third person or upon an oral agreement to convey the land to a third person, and the trust or agreement is unenforceable because of the Statute of Frauds and the transferee refuses to perform the trust or agreement, he holds the interest upon a constructive trust for the third person, if, but only if,
>
> (a) the transferee by fraud, duress or undue influence induced the transferor not to create an enforceable interest in the third person, or
>
> (b) the transferee at the time of the transfer was in a confidential relation to the transferor, or
>
> (c) the transfer was made by the transferor in contemplation of death.

The plaintiff carries a heavy burden of proof to show the agreement plus one of the three implementing factors so no reasonable doubt can exist as to the truth and existence of a trust. *Id.* at 427. In *Fix v. Fix,* 847 S.W.2d 762, 765 (Mo. banc 1993), the Court stated: "Either actual or constructive fraud is sufficient to support imposition of a constructive trust. A confidential, or fiduciary, relationship exists in the context of the law of constructive trusts when a special confidence is

reposed in one party and there is resulting domination of or influence on the other party."

■ "A breach of promise to reconvey property, made during a confidential relationship and relied upon by the promisee, is sufficient to establish constructive fraud." *In re Estate of Dawes*, 891 S.W.2d 510, 523 (Mo.App.1994).

■ All the necessary findings were present here to support imposition of a constructive trust on the Platte County property in favor of Wife. In the interest of judicial economy, the judgment entered by the trial court is modified to insert the "constructive" in lieu of the word "resulting" on page three of the amended judgment. Rule 84.14.

### IV.

In his next point, Husband claims there was an unjust division of assets and liabilities, which can be attributed to the trial court's failure to "place values on the marital property." As the reader has already gleaned, the marital assets consisted of the Platte County property (the marital house in Grandview was adjudged non-marital), one vehicle, two televisions, one computer, patio furniture, a microwave oven, assorted beer steins, and assorted personal clothing and furniture.

Husband's point faces several difficulties, the foremost of which is that he failed to request findings. His parents requested findings, but only on the issues of interest to them. In *Bullard v. Bullard*, 929 S.W.2d 942, 946 (Mo.App.1996), the Eastern District said the "... trial court is not required to specifically determine specific values of particular items of marital property unless a party requests such findings, or unless the record contains insufficient evidence to enable the court to make a just division." Husband makes no showing how the division of this property, is an unjust division. The property is Wife's only significant asset of the marriage. Wife brought the property into the marriage and she bears the responsibility of paying a $6,107 debt in order to retain the property. Point denied.

### V.

■ The next point which states, "[t]he trial court erred in finding that the sums loaned by third party respondents to Husband and Wife were a gift because such a finding was against the weight of the evidence," does not pass muster with the language in Rule 84.04(d) which states, "the points relied on shall state briefly and concisely what actions or rulings of the court are sought to be reviewed and wherein and why they are claimed to be erroneous...." As previously mentioned, the third-party respondents sought some $30,000–$38,000 from Husband and Wife for sums advanced by third party respondents to the couple. The judgment stated the third-party respondents would be barred from seeking any recovery, other that the $6,107 relating to the Platte County property, since there was no true debt, but the sums advanced were in the nature of gifts. Even if properly presented, this argument is subject to dismissal since this ruling against the third-party respondent's interest is not one that affects Husband. The appellant is not an aggrieved party by reason of a judgment stating he and his ex-wife do not owe his parents an amount of money. *Harris v. Union Electric Co.*, 685 S.W.2d 607, 611 (Mo.App.1985) ("A party is 'aggrieved' when the judgment operates prejudicially and directly on his personal or property rights or interest and such is an immediate and not merely a possible remote consequence.") This point is dismissed.

### VI.

As best interpreted, the last point asserts error in the trial judge's indication the trial would end on the second day, which effectively limited him to "... 45 minutes to conclude all of the evidence." Husband provides no showing of anything in the transcript which illuminates any prejudice. He made no offer of proof as to what the ruling did to preclude presentation of his case. This court in *Pollard v. Whitener, M.D.*, 965 S.W.2d 281, 285 (Mo.App. banc 1998) (four judges dissenting), was presented with the primary issue of whether the trial court abused its discretion by limiting the plaintiff in voir dire. The majority opinion held no per se abuse where

the trial court limited the party's voir dire to one hour and forty-five minutes, *Id.* at 288, but focused on the lack of proper objection by counsel as to how the ruling was incorrect and accepting the burden of showing how the party had been prejudiced. *Id.* at 289. Rulings limiting time allowed to litigants for presentation of their case can border on being arbitrary, but, where there was no showing at trial, nor here in less than a page of argument, can a party against whom such a ruling is made carry the day. Husband, also adds that he was "cut short" in cross-examination, but he fails to give any transcript references, in direct violation of Rule 84.04(h).

The judgment, as modified to now show a constructive trust instead of a resulting trust on the Platte County property, is in all respects affirmed. Costs assessed against the Husband.

All concur.