**Jane DOE, et al.**

v.

**HCA HEALTH SERVICES OF TENNESSEE, INC., d/b/a HCA Donelson Hospital.**

Supreme Court of Tennessee, at Nashville.

May 24, 2001.

H. Lee Barfield, II; James O. Bass, Jr.; Robert E. Cooper, Jr.; Matthew M. Curley; and Lyle Reid, Nashville, TN, for the appellant, HCA Health Services of Tennessee, Inc.

G. Gordon Bonnyman, Jr.; John A. Day; and Kathryn Barnett, Nashville, TN; and Ralph I. Knowles, Atlanta, GA, for the appellees, Jane Doe and John Doe.

William B. Hubbard, Nashville, TN, for the Amici Curiae, THA—An Association of Hospitals and Health Systems—and Adventist Health System Sunbelt Healthcare Corporation.

W. Ovid Collins, Jr. and Blakeley D. Matthews, Nashville, TN, for the Amicus Curiae, Tennessee Association of Business.

## OPINION

E. RILEY ANDERSON, C.J., delivered the opinion of the court, in which ADOLPHO A. BIRCH, JANICE M. HOLDER, and WILLIAM M. BARKER, JJ., joined.

We granted this appeal in order to determine whether a hospital's form contract in which the patient agrees to pay the "charges" not covered by insurance is sufficiently definite to constitute a valid contract. The trial court held that the word "charges" was sufficiently definite because the amount of the charges could be determined by referring to the hospital's confidential list of prices for all its goods and services; however, the court went on to hold that the hospital's charges had to be

"reasonable." The Court of Appeals held that the form contract did not incorporate the hospital's secret price list because the form contract contained no "reference to any 'document, transaction or other extrinsic fact' to which reference could be made to ascertain the amount [the patient] promised to pay"; consequently, the intermediate court found that the secret price list was not an independent, objective, or verifiable method by which to determine hospital charges. The intermediate court elected not to declare the contract unenforceable. Instead, the Court of Appeals affirmed the trial court's judgment, holding that the patient is obligated to pay a "reasonable" charge for the medical goods and services she received. We affirm the judgment of the Court of Appeals.

## BACKGROUND

Jane Doe was scheduled to have a surgical procedure at HCA Donelson Hospital in July 1991.[1] She was insured at the time through her husband's employer. As part of the hospital's pre-admission process, Jane Doe signed a hospital form titled "Assignment of Benefits" ("the contract") which read in part as follows:

> I hereby authorize payment to **HCA Donelson Hospital** insurance benefits herein specified and otherwise payable to me but not to exceed the total charges for this hospital confinement.... *I understand I am financially responsible to the hospital for charges not covered by this authorization.* I further assume responsibility for pay-

ment of reasonable attorney/and/or collection fees in the event such costs are incurred in the collection of this debt.

(Second emphasis added.)

Jane Doe was admitted to HCA Donelson Hospital on July 2, 1991. She had her scheduled surgery and was released from the hospital on July 6, 1991. The total bill for Mrs. Doe's hospital stay was $6,731.05. This amount was determined according to the hospital's "Charge Master," a confidential list of charges made by the hospital for all its goods and services, which is used to compute charges for all private commercial patients who are treated on a fee-for-service basis. The Charge Master is compiled and maintained by the hospital's chief financial officer on the hospital's computer system. In 1991, the Charge Master contained approximately 295 pages and listed prices for approximately 7,650 items. The Charge Master is considered confidential proprietary information and is not shown to anyone other than the officers and employees of the hospital and authorized consultants. The Charge Master is adjusted on a weekly basis to reflect current cost data; the hospital's costs are marked up by a mathematical formula designed to produce a targeted amount of profit for the hospital. When the Charge Master is adjusted on the hospital's computer, the hospital does not preserve or archive the earlier versions of the Charge Master.

Under the terms of its policy, Jane Doe's insurance carrier paid eighty percent of the hospital bill, leaving an unpaid balance of $1,346.21. The hospital billed

---

1. The trial court permitted the plaintiffs to use pseudonyms because "Mrs. Doe" is employed in a physician's office, and she feared that public disclosure of her identity might subject her employer to retaliation and/or embarrassment. No issue has been raised on appeal concerning the trial court's decision to allow the plaintiffs to prosecute this action under pseudonyms.

The defendant, HCA Health Services of Tennessee, Inc., operated HCA Donelson Hospital. After the events that led to this lawsuit, the hospital moved to a new location and was renamed Summit Medical Center. For ease of reference, we will refer to the hospital as HCA Donelson Hospital.

Jane Doe for the unpaid balance. The Does then requested additional time to pay due to their financial circumstances. However, no payments were made, and after six months, the hospital referred the account to a collection agency.

During the collection process, the Does sued HCA Donelson Hospital seeking a declaratory judgment that the hospital breached its contract by demanding unreasonable charges for its goods and services.[2] The hospital answered, denying the allegations of the complaint, and filed a counterclaim to collect the unpaid balance of the account.

The hospital later moved for summary judgment. The hospital argued that the plaintiffs's claims against it are based upon the premise that the contract contained an "open price term," rather than a definite price. However, the hospital argued that the term "charges" is a definite price term because it refers to the hospital's Charge Master. The trial court found that the word "charges" in the contract is sufficiently definite because it can be quantified by reference to the hospital's Charge Master; consequently, the court held that the contract is valid. Despite its holding that the contract is valid, the trial court also ruled that the charges listed in the Charge Master must be "reasonable." The court found that there are material issues of fact concerning the preparation and reasonableness of the charges in the Charge Master, as well as material issues concerning whether Mrs. Doe's bill actually com-

ported with the Charge Master. The trial court therefore denied the hospital's motion for summary judgment.

The Court of Appeals found the contract is indefinite because the promise in the contract to pay "charges" contains no "reference to any 'document, transaction or other extrinsic fact' to which reference could be made to ascertain the amount [the patient] promised to pay." The intermediate court rejected the hospital's argument that the Charge Master is such a document; the court concluded that the Charge Master is not an "independent, objective, or verifiable means" of determining the "charges" for Jane Doe's hospital stay.[3] While the Court of Appeals found that the price term of the contract is indefinite, the court declined to hold that the contract is unenforceable; instead, the intermediate court agreed with the trial court (albeit on different grounds) that Mrs. Doe is "obligated to pay charges that are reasonable" and that the hospital is entitled to recover for the "fair value of the goods and services furnished[.]"

We granted HCA Donelson Hospital's application for permission to appeal.

## ANALYSIS
### Standard of Review

The standards governing appellate review of a motion for summary judgment are well settled. Summary judgment is proper when the moving party demon-

---

2. In addition, the Does' complaint alleged that the hospital violated the Tennessee Consumer Protection Act, Tenn.Code Ann. §§ 47–18–101 to 47–18–125 (Supp.2000); that the hospital violated a duty of good faith and fair dealing; and that the contract was an adhesion contract. Those claims are not at issue in this appeal.

3. HCA Donelson Hospital and the amici curiae argue that the intermediate court's phrase

"independent, objective, verifiable means" effectively imposes a requirement that all prices be based upon "independent, objective, verifiable" sources. We do not believe that the interpretation advanced by the defendant and the amici curiae is the meaning intended by the Court of Appeals. Moreover, we do not adopt that phrase in our analysis of the issues discussed in this opinion.

strates that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law. *Seavers v. Methodist Med. Ctr. of Oak Ridge,* 9 S.W.3d 86, 90–91 (Tenn.1999); *Byrd v. Hall,* 847 S.W.2d 208, 210 (Tenn.1993).

We review summary judgments as a question of law; therefore, we review the record in this case de novo without a presumption of correctness to determine whether the requirements for summary judgment have been met. *Griffin v. Shelter Mut. Ins. Co.,* 18 S.W.3d 195, 197–98 (Tenn.2000); *Bain v. Wells,* 936 S.W.2d 618, 622 (Tenn.1997). We must view the evidence and all reasonable inferences in the light most favorable to the nonmoving party. *Seavers,* 9 S.W.3d at 90–91; *Byrd,* 847 S.W.2d at 210–11. Summary judgment is appropriate only when the facts and inferences permit a reasonable person to reach only one conclusion. *Carvell v. Bottoms,* 900 S.W.2d 23, 26 (Tenn.1995) (citing *Byrd,* 847 S.W.2d at 210–11).

■ The ascertainment of the intention of the parties to a written contract is a question of law, rather than a question of fact. *Hamblen County v. City of Morristown,* 656 S.W.2d 331, 335–36 (Tenn.1983) (citations omitted).

### Indefiniteness of Essential Term of Contract

■ A contract " 'must result from a meeting of the minds of the parties in mutual assent to the terms, must be based upon a sufficient consideration, free from fraud or undue influence, not against public policy and sufficiently definite to be enforced.' " *Higgins v. Oil, Chem., and Atomic Workers Int'l Union, Local # 3–677,* 811 S.W.2d 875, 879 (Tenn.1991) (quoting *Johnson v. Central Nat'l Ins. Co. of Omaha,* 210 Tenn. 24, 34–35, 356 S.W.2d 277, 281 (Tenn.1962) (citations omitted)). Indefiniteness regarding an essential element of a contract "may prevent the creation of an enforceable contract." *Jamestowne On Signal, Inc. v. First Fed. Sav. & Loan Ass'n,* 807 S.W.2d 559, 565 (Tenn.Ct. App.1990) (citing *Hansen v. Snell,* 11 Utah 2d 64, 354 P.2d 1070 (1960)). A contract " 'must be of sufficient explicitness so that a court can perceive what are the respective obligations of the parties.' " *Higgins,* 811 S.W.2d at 880 (quoting *Soar v. National Football League Players' Ass'n,* 550 F.2d 1287, 1290 (1st Cir.1977)); *see also Restatement (Second) of Contracts* § 33(2) (1981) ("The terms of a contract are reasonably certain if they provide a basis for determining the existence of a breach and for giving an appropriate remedy.")

■ Two of the leading treatises on contract law provide additional authority concerning the requirement of definite contractual terms. "Certainty with respect to promises does not have to be apparent from the promise itself, so long as the promise contains a reference to some document, transaction or other extrinsic facts from which its meaning may be made clear." 1 Richard A. Lord, *Williston on Contracts,* § 4:27, at 593 (4th ed.1990). In addition, as stated in 1 Joseph M. Perillo, *Corbin on Contracts,* § 4.3, at 567–68 (Rev. ed.1993):

> If the parties provide a practicable method for determining [the] price or compensation there is no such indefiniteness or uncertainty as will prevent the agreement from being an enforceable contract. The same is true if they agree upon payment of a "reasonable" price or compensation. There are cases, however, in which it is clear that the parties have not expressly or implicitly agreed upon a "reasonable price," and also have not prescribed a practicable method of determination. Where this is true, the

agreement is too indefinite and uncertain for enforcement.

(Footnotes omitted).

The issue in the case before us is whether the term "charges" constitutes a "sufficiently definite" price term in the contract between Jane Doe and HCA Donelson Hospital.

### Price Term of Hospital's Form Contract

In reviewing the hospital's form contract signed by Jane Doe, we note that the contract contains no express reference to a "document, transaction or other extrinsic facts" nor does it set out "a practicable method" by which Jane Doe's "charges" are to be determined. The contract merely states (in pertinent part): "I understand I am financially responsible to the hospital for *charges* not covered by this authorization." (Emphasis added.) HCA Donelson Hospital asserts, however, that its Charge Master is a sufficient means by which to determine Jane Doe's hospital charges, and that the Charge Master thereby supplies a definite price term in the contract.

■ We disagree. While it is true that the Charge Master *could* be used as a reference in determining a patient's charges, the flaw in the hospital's argument is that the contract itself does not "*contain* [ ] a reference to some document, transaction or other extrinsic facts [e.g., the Charge Master] from which its meaning may be made clear." *See Williston on Contracts,* § 4:27, at 593 (emphasis added). Because the agreement does not refer to a document or extrinsic facts by which the price will be determined, we hold that the price term in the agreement between Jane Doe and HCA Donelson Hospital is indefinite.

In so holding, we are cognizant of the arguments of the hospital and the amici curiae that invalidating the contract in dispute will wreak havoc on both the hospital industry and on non-health-care businesses alike. They argue that hospitals and other businesses commonly use contracts containing language similar to the hospital's use of "charges" in stating the price to be paid by the purchaser. They contend that holding this hospital contract to be indefinite could cause instability in Tennessee's economy because such a holding jeopardizes any contract that does not state a specific price. To be clear, the Court's holding in this case does not invalidate all contracts that do not state a specific price; to the contrary, our holding is based upon the particular facts of this case, *i.e.*, that HCA Donelson Hospital's contract signed by Jane Doe did not provide any reference to a document, transaction or other extrinsic facts by which the price could be determined and the meaning of the term "charge" made clear. Had the agreement adequately defined "charges," the price term of the contract would not have been indefinite.

### Enforceability of Indefinite Contract— Quasi–Contract Remedy

■ Having determined that the contract is indefinite, we turn to consider the effect of that indefiniteness on the hospital's right to payment for the medical goods and services Jane Doe received as a patient of the hospital. Where a contract is invalid or unenforceable, the court may impose a contractual obligation when the defendant will be unjustly enriched absent a quasi-contractual obligation. *See White-haven Community Baptist Church v. Holloway,* 973 S.W.2d 592, 596 (Tenn.1998) (citing *Paschall's Inc. v. Dozier,* 219 Tenn. 45, 407 S.W.2d 150, 154–55 (1966)); *see also Castelli v. Lien,* 910 S.W.2d 420, 427–28 (Tenn.Ct.App.1995).

A quantum meruit action is an equitable substitute for a contract claim pursuant to which a party may recover the

reasonable value of goods and services provided to another if the following circumstances are shown:

(1) There is no existing, enforceable contract between the parties covering the same subject matter;

(2) The party seeking recovery proves that it provided valuable goods or services;

(3) The party to be charged received the goods or services;

(4) The circumstances indicate that the parties to the transaction should have reasonably understood that the person providing the goods or services expected to be compensated; and

(5) The circumstances demonstrate that it would be unjust for a party to retain the goods or services without payment.

*Swafford v. Harris,* 967 S.W.2d 319, 324 (Tenn.1998).

■ All five circumstances listed in *Swafford* apply to the pending case. First, for the reasons stated earlier in this opinion, there is no existing, *enforceable* contract between the Jane Doe and HCA Donelson Hospital. Second, the record clearly shows that the hospital provided valuable goods or services to Jane Doe. Third, it is undisputed that Jane Doe received the goods or services provided by the hospital. Fourth, the circumstances indicate that the parties reasonably understood that the hospital providing the goods or services expected to be compensated. Fifth, the circumstances demonstrate that it would be unjust for Jane Doe to retain the goods or services without payment to HCA Donelson Hospital. Accordingly, we conclude that the hospital is entitled to be paid the reasonable value of the medical goods and services provided to Jane Doe.

■ Courts will not award quantum meruit recoveries without some proof of the reasonable value of the goods or services, but the required proof may be an estimation of the value of the goods and services. *Castelli,* 910 S.W.2d at 427. Because our holding will result in a remand of this case for further proceedings, we deem it advisable to briefly address the issue of "reasonable value" for the benefit of the parties and the trial court.

■ Neither the parties nor our own research have disclosed a Tennessee appellate case considering the issue of "reasonable value" of medical goods and services provided by a hospital to a patient. However, appellate decisions from other states suggest that "reasonable value" in such cases is to be determined by considering the hospital's internal factors as well as the similar charges of other hospitals in the community. *See Galloway v. Methodist Hosp., Inc.,* 658 N.E.2d 611, 614 (Ind. Ct.App.1995) (noting the testimony of hospital's controller that "Hospital's charges were comparable to other facilities in northwest Indiana ... [and that] Hospital's charges were based on Hospital's budgetary needs[,]" the court found that "[t]he fact that Hospital's charges are based on the costs associated with providing health care does not make the charges unreasonable"); *Heartland Health Sys., Inc. v. Chamberlin,* 871 S.W.2d 8, 11 (Mo. Ct.App.1993) (finding that the testimony of the hospital representative that "she was familiar with the customary charges in the medical industry for services of the same type as those rendered to [the patient]" was sufficient to make prima facie case for the reasonable value of the services rendered) [4]; *Victory Mem'l Hosp. v. Rice,* 143

---

**4.** We note that the Missouri appellate court also stated in *Heartland Health Sys., Inc. v.* *Chamberlin* that the hospital did not need to prove that the charge for each individual item

Ill.App.3d 621, 97 Ill.Dec. 635, 493 N.E.2d 117, 120 (1986) (stating that "any assessment of the reasonableness of a private hospital's charges must include consideration and recognition of the particular hospital's costs, functions and services to make a valid determination of whether such charges were reasonable for that hospital alone or compared to the charges of other area hospitals"); *Ellis Hosp. v. Little,* 65 A.D.2d 644, 409 N.Y.S.2d 459, 461 (N.Y.App.Div.1978) (stating that proof of the reasonable value of services included testimony that "the cost of the hospital's operation was the basic consideration in establishing the charges for the services rendered" and that "the charges set forth in decedent's ledger were ... similar to those at [another hospital in the community]").

We find that the foregoing standards are appropriate for use in Tennessee in cases in which there is no valid, enforceable contract between a hospital and its patient. We adopt these standards for determining the "reasonable value" of the medical goods and services provided by the hospital to the patient in such cases.

### CONCLUSION

The price term in the agreement between Jane Doe and HCA Donelson Hospital is indefinite, and the agreement is therefore unenforceable. For this reason, the trial court correctly denied the hospital's motion for summary judgment. Under quasi-contract principles, HCA Donelson Hospital is entitled to the reasonable value of the medical goods and services it provided to Jane Doe. The judgment of the Court of Appeals is affirmed, and the case

is remanded for further proceedings consistent with this opinion.

Costs of this appeal are taxed to the defendant-appellant, HCA Health Services of Tennessee, Inc.

FRANK F. DROWOTA, not participating.

billed to the patient was reasonable. 871 S.W.2d at 11. While Missouri law required the hospital to prove both the necessity for and the reasonable value of the services rendered to the patient, the court stated that "the

burden of challenging any particular item or items was upon the defendants [-the patient and his mother, who had signed an agreement to pay her son's hospital charges]." *Id.*