IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs, February 22, 2007

# DANIEL BRADSHAW v. CHATTANOOGA RAILCAR SERVICES, LLV, and KINGSPORT RAIL CAR SERVICES, LLC.

**Direct Appeal from the Chancery Court for Hamilton County**
**No. 02-0909    Hon. W. Frank Brown, III, Chancellor**

---

**No. E2005-02728-COA-R3-CV  - FILED APRIL 19, 2007**

---

Plaintiff sued corporate defendants alleging that defendants failed to make proper distribution to shareholders under the operating agreements of each company.  The Trial Court held that plaintiff received cash distributions from one of the companies or from KRS sufficient to pay his income tax liability under the terms of the operating agreement, but no distribution was made by CRS.  On appeal, plaintiff argues that CRS, a separate entity from KRS, was required under the operating agreement to distribute to the plaintiff funds sufficient to pay his tax liability, since distributions were made to other members.  Under the plain language of the agreement, we agree that plaintiff was due a distribution and we remand for the Trial Court to determine the proper amount.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Chancery Court Affirmed in part, Reversed in part and Remanded.**

HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., J., and D. MICHAEL SWINEY, J., joined.

Randall D. Larramore, Chattanooga, Tennessee, for appellant.

**OPINION**

In this action, plaintiff sued Chattanooga Railcar Services, LLC, ("CRS"), Kingsport Railcar Services, LLC ("KRS"), and Ohio Railcar Services, LLC ('ORS"), asserting that he was a charter member of these companies, and owned 12%, 9.6%and 4% of the companies, respectively. He alleged that under paragraph 8.2 of the operating agreements of each company, the companies were to make no distributions to shareholders until an amount sufficient to pay the tax liability of

the shareholders had been provided, even if the company had to borrow money to make the payments. He specifically alleged that in 2000 he incurred tax liability of $12,187.00 based on the undistributed profits of CRS, and in 2001, he incurred tax liability of $805.00 based on the same. He alleged that in 2000, he incurred tax liability of $10,404.00 based on the undistributed profits of KRS, and in 2001 he incurred tax liability of $7,803.00 based on the same. He averred that no payments were made by the companies to cover this liability, but disbursements to shareholders were made anyway, and that this constituted a breach of the contract. He sought compensatory damages, punitive damages, attorney's fees and costs.

Defendants Answered, denying any liability, and plaintiff filed a Notice of Dismissal as to ORS, pursuant to Tenn. R. Civ. P. 41.01.

Following an evidentiary hearing, the Trial Court filed a Memorandum Opinion and Order, wherein the Court found the defendant companies were involved in the repair and storage of railcars, and that plaintiff owned 12% of CRS and 9.6% of KRS.

The Court discussed the pertinent provisions of the operating agreements, and held that the agreements were not ambiguous, and pursuant to paragraph 8.2, the manager had discretion regarding whether distributions were to be made or not. The Court found that plaintiff received cash distributions from KRS in 2000 and 2001, and that he received enough to pay his income tax liability. The Court found there was evidence of plaintiff's "unclean hands", but refused to reject plaintiff's claims on that basis, and decided the case on the merits.

The Court held that paragraph 8.2 did not require the companies to pay all of the net income to the members each year, and allowed the manager the discretion to retain funds for various matters. The Court found that the contract did not support plaintiff's allegations. Since the companies did distribute sufficient funds to the plaintiff which would have enabled him to pay his taxes, and therefore found no wrongdoing by the companies.

Finally, the Court found that plaintiff was not due any relief because he had no right to demand additional distributions, because the companies paid him sufficient monies in 2000 and 2001 to pay the taxes due on his share of the companies' income. The Court held if its ruling was incorrect, then the most plaintiff would be due would be 12% of the distributions paid to other shareholders in 2000 by CRS ($14,558.00) which would be $1,746.96.

A Statement of Evidence was prepared for purposes of appeal, which states that the plaintiff testified he was a former transportation employee of TVA and it was his idea to begin the companies. He testified that during the years 2000 and 2001 the companies did not provide a distribution sufficient to cover the tax liabilities of its members, and that for 2000, $58,420.00 was reported as income on his income taxes from the companies ($24,630.00 from CRS and $33,790.00 from KRS).

Plaintiff testified that for 2001, $29,057.00 was reported as income on his income

taxes from the companies ($358.00 from CRS and $28,699.00 from KRS). He further testified that for 2000 he was obligated to pay tax on $9,170.00 for the retained earnings of KRS and was obligated to pay tax on $6,305.00 for the retained earnings of CRS, and that for 2001 he was obligated to pay tax on $28,699.00 for the retained earnings of KRS and he was obligated to pay tax on $358.00 for the retained earnings of CRS.

Gary Slatten, the Chief Financial Officer for CRS and KRS for 2000 and 2001, testified via deposition that Steve and Brenda McKenzie were the majority shareholders in the companies, and owned several other companies of which Slatten was the CFO. Slatten testified that in her experience, tax distributions were made following the calculation of the flow through taxation for the year, and were identified as distributions when made. She testified that she had reviewed the distributions at issue, and that they were not tax distributions, and that when plaintiff requested his tax distribution from CRS, she spoke with Mr. McKenzie and he told her that he had already put too much money into the company and that no payments would be made. With regard to KRS, McKenzie told her that since distributions had been made which exceeded the tax liability, no further payments were necessary.

The evidence established that plaintiff did not pay the taxes he owed for 2000 and 2001, and as a result, the IRS issued notices of intent to levy, and also assessed interest and penalties on the unpaid tax which was owed to the IRS by plaintiff.

Ray Stephens and Terry Lynn Gaston both testified for the defendants, and testified that plaintiff had been terminated for wrongdoing and said he filed suit to retaliate. They testified that plaintiff went before the Board of Governors in 2001 and requested an additional distribution, which the Board refused.

The issues presented on appeal are:

1.  Did the Trial Court err in holding the defendants were not obligated to make tax distributions pursuant to their operating agreements?

2.  Did the Trial Court err in determining plaintiff's damages if he succeeded in his claim?

At the outset of our discussion of the issues, we note that defendants did not file an appellee brief.

Plaintiff argues the Trial Court erred in its interpretation of the companies' operating agreements. Interpretation of these agreements is a question of law and subject to *de novo* review by this Court. *Doe v. HCA Health Services of Tenn., Inc.*, 46 S.W.3d 191 (Tenn. 2001). The operating agreement of CRS provides:

8.1  <u>Distributions of Distributable Cash</u>. Subject to the provisions of the

Paragraph above titled "Tax Treatment", the Chief Manager shall distribute Distributable Cash (as defined below in the Paragraph titled "Distributable Cash") at such times and in such amounts as he may determine, in his sole discretion, after approval by the Board of Governors. All distributions of Distributable Cash shall be made to the Members in proportion to their Participating Percentages on the date of distribution.

8.2    Distributable Cash. As used in this Agreement, Distributable Cash means, with respect to the Company for any period of time, all funds of the Company on hand or in bank accounts of the Company that, in the discretion of the Chief Manager, is available for distribution to the Members after provisions has been made for (I) an amount sufficient to pay any Federal or state taxes assessed on Company income taxable to the Members at the highest tax rate owed by any Member, with proportionate distributions made to all other Members, even if the Company must borrow the money to make such payments, (ii) payment of all operating expenses of the Company as of such time, (iii) provision for payment as they become due of all outstanding and unpaid current obligations of the Company as of such time, and (iv) provision for working capital and such reserves as the Chief Manager deems necessary or appropriate for Company operations.

The operating agreement of KRS contain near-identical provisions.

The Court held the language contained in the agreements was not ambiguous. The agreements plainly state that provisions must be made for "an amount sufficient to pay any Federal or state taxes assessed on Company income taxable to the Members", before any additional distributions can be made. It is undisputed that plaintiff received amounts sufficient to pay his taxes assessed on Company income taxable to him from KRS in 2000 and 2001. Plaintiff argues that these distributions were not tax distributions and were not ear-marked as such. But the Trial Court found plaintiff received sufficient amounts from KRS with which he could have paid his taxes, and had no right to distributions. Accordingly, with regard to defendant KRS, plaintiff failed to show any breach of agreement, and we affirm as to that defendant.

Plaintiff further argues, however, that the Court erred in "lumping" both companies together when analyzing the distributions and tax liability, thus ignoring the fact that CRS distributed nothing to plaintiff in 2000 and 2001. CRS is a completely separate entity from KRS and its operating agreement would require plaintiff receive a distribution from it sufficient to pay his tax liability, since, as the Trial Court found, distributions were made to other members. Plaintiff incurred tax liability for Company income in 2000 and 2001 for CRS but received no distributions from CRS when the other members did. Thus plaintiff is due a distribution in the amount sufficient to pay his tax liability for those years, pursuant to the plain language of that operating agreement.

The Trial Court treated the two companies as an aggregate, and said the total

-4-

distributions from both were sufficient to pay his total tax liability for both, but as a matter of fact, both are separate companies with separate operating agreements. We hold that plaintiff should have received a sufficient distribution from CRS to pay his tax liability from the income attributed to CRS. The fact he received sufficient distribution to pay his tax liability for income attributable to KRS is of no consequence when dealing with the tax liability from income attributable to CRS. The Court erred in treating the two separate companies as one aggregate entity. We remand the case to determine what plaintiff's tax liability was during 2000 and 2001 for income attributable to CRS only, and then order an appropriate distribution.[1] The operating agreement, however, requires a distribution in "an amount sufficient to pay any Federal or state taxes assessed on Company income taxable to the Members at the highest tax rate owed by any Member, with proportionate distributions made to all other Members." On remand, this is what the Court should determine and make an appropriate award to the plaintiff.

In sum, the Trial Court correctly found plaintiff has received sufficient distributions from KRS to pay his income tax due on the income attributable to that Company. The Trial Court erred in finding the plaintiff had received sufficient distribution from CRS to pay his income tax due on income attributable to CRS, and we therefore remand, to determine the amount plaintiff is owed due to income attributable to CRS.

The cost of the appeal is assessed to defendant, CRS.

 

_____
HERSCHEL PICKENS FRANKS, P.J.

---

[1]The Trial Court seemed to acknowledge that it may have erred and opined that in the alternative, plaintiff would only be entitled to 12% of the amount distributed to other members by CRS in those years.