IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
February 13, 2003 Session

## ANNE STRICKLAND v. DANIEL R. CARTWRIGHT, ET AL.

**Appeal from the Chancery Court for Blount County**
**No. 00-222      Telford E. Forgety, Jr., Chancellor**

**FILED APRIL 10, 2003**

**No. E2002-02176-COA-R3-CV**

Anne Strickland ("Plaintiff") approached Daniel Cartwright ("Defendant") about the possible purchase of Defendant's restaurant. Unable to come up with the full purchase price of $1.5 million, Plaintiff made an initial payment of $170,000 and began leasing the restaurant with monthly rental payments of $7,000. No written agreement ever was finalized between the parties. Plaintiff vacated the premises after six months allegedly due to the poor condition of the building and the amount of repairs that were needed. Plaintiff filed suit seeking a return of the $170,000, claiming this money was intended by the parties to be a down payment on the purchase of the restaurant, an event which never occurred. Defendant claimed the parties had agreed to a nonrefundable initial payment of $250,000 to allow Plaintiff the privilege of being able to walk in and take over a fully staffed and operational restaurant. Since Plaintiff paid only $170,000 toward the initial $250,000 payment, Defendant filed a counterclaim for the remaining $80,000. After a trial, the Trial Court awarded Plaintiff a judgment in the amount of $138,000. Both parties appeal. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the**
**Chancery Court Affirmed; Case Remanded.**

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which HOUSTON M. GODDARD, P.J., and CHARLES D. SUSANO, JR., J., joined.

L. Lee Kull and Irma G. Freestate, Maryville, Tennessee, for the Appellants Daniel R. Cartwright and Lorraine S. Cartwright.

Brian T. Mansfield, Sevierville, Tennessee, for the Appellee Anne Strickland.

# OPINION

## Background

This lawsuit involves a restaurant in Townsend, Tennessee, and is a classic textbook example of what can happen when agreements are not put into writing. Plaintiff filed this lawsuit in December of 2000, claiming she entered into discussions earlier that same year with Defendant[1] regarding leasing, "with a possible option of purchasing," a restaurant owned by Defendant. Plaintiff claims to have relied upon Defendant's representations regarding the condition of fixtures and equipment, as well as the general physical condition of the restaurant. According to Plaintiff, she paid Defendant $170,000 in April of 2000, as a down payment toward the purchase of the restaurant. This payment was made in reliance on the above representations as well as Defendant's commitment to repair certain specific problem areas in the restaurant. Plaintiff claims she also paid an additional $14,000 as a "leasehold deposit" on the property and then began paying monthly rent in the amount of $7,000. Plaintiff admits the parties did not enter into a written agreement of any kind. Plaintiff maintains Defendant failed or refused to honor his commitment to repair certain areas of the restaurant, and that she discovered other significant and material defects with the premises after she began leasing the restaurant. As a result, Plaintiff terminated the lease effective August 30 and paid the monthly rent up through that date. In the complaint, Plaintiff sought a return of both the $170,000 and the $14,000. Plaintiff also claimed Defendant refused to allow her to retrieve certain equipment from the restaurant and $10,000 in inventory. Plaintiff asserted several causes of action against Defendant, including failure of consideration, lack of consummation of a contract, and "money had and received." Alternatively, Plaintiff alleged breach of contract.

Defendant filed an answer admitting he entered into discussions with Plaintiff regarding the lease of the restaurant and its possible purchase. Defendant admitted receiving $170,000, but denied it was a down payment on the purchase of the restaurant. Defendant also admitted receiving the $14,000, which he claims was payment for the first and last months of rent. Defendant denied failing to honor any promises or commitments with regard to repairing the restaurant and generally denied owing Plaintiff any money.

Defendant filed a counterclaim asserting he and Plaintiff had agreed to an initial payment of $250,000 as a nonrefundable payment for the privilege to Plaintiff of obtaining the use of a highly profitable, well-established, and staffed restaurant. According to Defendant, Plaintiff never paid the remaining $80,000 of the $250,000. Defendant denied ever being obligated to sell the restaurant to Plaintiff, but admitted Plaintiff did have a right of first refusal if he did decide to sell. Finally, Defendant claimed that due to Plaintiff's mismanagement of the restaurant, several excellent employees resigned and the restaurant lost its long-time customer base. In the

---

[1] Plaintiff sued Daniel Cartwright and his wife, Lorraine S. Cartwright. Because most, if not all, of the relevant discussions and events involved only Daniel Cartwright, any reference in this Opinion to "Defendant" will refer only to Daniel Cartwright unless otherwise noted.

counterclaim, Defendant sought as damages the additional $80,000, and an unspecified amount for "losses sustained as a result of … [Plaintiff's] mismanagement and abandonment of the premises."

After a trial, the Trial Court entered a Judgment for Plaintiff. In its Judgment, the Trial Court stated:

> Upon consideration of the testimony of the parties and witnesses, all of the evidence presented, the argument of counsel and the record as a whole, the Court does find that the Plaintiff is entitled to have and recover a Judgment [in the amount of $138,000] for a portion of money previously paid to the Defendants for a *Lease with Option* in connection with the real property.… (emphasis added).

The issues on appeal center exclusively around the initial payment of $250,000. More specifically, the issues involve whether Plaintiff is entitled to recoup some or all of the $170,000, or whether she owes Defendant the remaining $80,000. While the Judgment does not speak directly to the portion of Defendant's counterclaim surrounding the alleged mismanagement by Plaintiff and resulting loss of employees and customer base, no issue is raised on appeal to this part of the counterclaim. Plaintiff was not awarded any damages for improvements she allegedly made to the restaurant, for the promises Defendant allegedly did not fulfill with regard to the condition and repairs to the restaurant, or for inventory she claims she was unable to retrieve. These claims, likewise, are not at issue on appeal. Accordingly, we limit our review and discussion of the record as it pertains to the initial payment of $250,000, of which Plaintiff paid $170,000.

At trial, Plaintiff testified she wanted to purchase a restaurant. A wedding chapel in which Plaintiff had an ownership interest was located next door to Defendant's restaurant. Plaintiff approached Defendant about the restaurant and was told the purchase price was $1.5 million. Plaintiff explained she "didn't have $1.5 million," but informed Defendant she did have property located in Florida which was for sale. In response, Defendant said he would accept $250,000 toward the purchase and Plaintiff could pay rent of $7,000 per month in the meantime. Plaintiff testified the $170,000 was toward the purchase of the restaurant and the $7,000 monthly rent payment would be effective for up to five years.[2] According to Plaintiff, she could have purchased the restaurant at any time during the next five years and the parties had agreed the $250,000 would be credited toward the purchase price. Plaintiff claimed she never intended to buy Defendant's "business" because in her opinion, it was minimal. Rather, she intended to buy the building and the real estate and "create my own business."

Plaintiff testified Defendant presented her with a "Rough Draft" of a lease, which she claimed was unacceptable because it did not set forth Defendant's obligation to repair certain aspects of the building. Plaintiff told Defendant she would have her attorney either review and make

---

[2] Initially, Plaintiff was to pay $170,000 of the $250,000, and her business partner was to pay the remaining $80,000. Her business partner did not pay the remaining $80,000.

changes to the lease or draft a new one. Plaintiff's attorney drafted a lease which set forth Plaintiff's understanding of the terms. That document, which never was finalized or signed by the parties, indicated Plaintiff had an option to purchase and acknowledged a down payment of $170,000 toward the purchase price.

On cross-examination, Plaintiff admitted to testifying at her deposition that a total of $250,000 was to be paid for the first five years and then she would have the option to purchase the building. She further stated in her deposition that if she did not purchase the building after five years, she could receive another five-year lease if she paid a second $250,000. Plaintiff acknowledged writing at the bottom of her check to Defendant for $170,000 the following notation: "Restaurant, Cartwright lease/option purchase."

On redirect examination, Plaintiff testified that if Defendant had done what he had agreed to do by way of repairs, and if she had leased the property for five full years and then decided not to purchase, she would have forfeited the $250,000 (assuming the remaining $80,000 had been paid) at the end of that five years. Plaintiff went on to explain, however, that she fully intended at the very beginning on buying the property and the $170,000 was a down payment to be applied toward the purchase price. Plaintiff maintained she never would have paid Defendant $170,000 simply for the privilege of walking onto his property and taking over the restaurant without the understanding that these funds would be applied toward the purchase price.

As one might expect, Defendant's recollection of events and what the parties had agreed to was quite different from that of Plaintiff's. According to Defendant, the $170,000 did not have "anything to do towards buying that property . . . [and] wasn't a down payment on anything." Defendant claimed Plaintiff did not "really" have an option to purchase the property. Rather, Plaintiff paid the $170,000 toward a five-year lease, plus an additional $7,000 per month. According to Defendant, Plaintiff was supposed to pay $250,000 toward the five-year lease and $80,000 was still owing. For all of this money, Plaintiff was given a key to the restaurant and could operate it for up to five years. Regardless of how long she operated the restaurant, the money was nonrefundable. The initial $250,000 plus the $7,000 per month gave Plaintiff the right to operate the restaurant and use the equipment, inventory, employees, etc. Defendant testified the selling price for the restaurant was $1.5 million, and he would have sold the restaurant to Plaintiff at any time had she been able to pay this amount. If Plaintiff had purchased the restaurant, the initial payment of $170,000 (or $250,000 assuming the additional $80,000 had been paid) would not have been applied toward the $1.5 million purchase price.

At trial, Defendant identified a handwritten note he had made during the discussions with Plaintiff. This note states: "Or can purchase after five years and $250,000 goes toward the purchase price." Notwithstanding what the note says, Defendant steadfastly maintained the initial $250,000 was not to be applied toward the purchase price. Rather, he claimed if Plaintiff had remained on the premises for five years and paid another $250,000 for a second five-year term, this second payment of $250,000, but not the first $250,000 payment, would have been applied toward the purchase price. Defendant testified he agreed to fix or repair only five items, and that he

-4-

completed these repairs as agreed. Defendant admitted the condition of the restaurant was acceptable when Plaintiff vacated the premises. Defendant testified the restaurant was doing well prior to Plaintiff's taking over. Defendant stated that when he reclaimed the restaurant, "I didn't have no business. I didn't have not one employee. She left me with nothing, not one employee, not no business, no nothing."

After hearing the above testimony, the Trial Court heard closing arguments and questioned counsel regarding their respective positions. During the course of these discussions, the Trial Court correctly noted that both parties had made a "terrible, terrible mistake" by not putting their intentions in writing. The Trial Court also stated there were "misunderstandings, apparently, between the parties as to what was said, or what was meant, or what they really agreed to." The Trial Court also stated:

> Nobody argues here that you've got a real binding contract between
> these parties. In fact, everybody tacitly, if not overtly, admits, even
> if these parties had a contract, it's over with. It's not been carried out.

Even though the Trial Court found there was a misunderstanding as to what the parties had agreed to and there was no binding contract, the Trial Court went on to conclude that there was either a "straightforward lease, or it was a lease with an option to buy." The Trial Court then observed Plaintiff had no enforceable option, and there was "complete disagreement about whether she was ever to have had one." Even though the Trial Court held Plaintiff did not have an enforceable option, the Trial Court noted that Plaintiff nevertheless claimed she "at least had an option. Well, if she did, she's got to pay part of the option money. If she had an option on his property for six months, then the title to his property was encumbered for six months, and that is worth something."

The Trial Court then set about to assign a monetary value to this unenforceable six-month option, something neither party ever maintained existed. In so doing, the Trial Court first determined the total amount of money Plaintiff would have paid had she leased the property for a full five years, which was $670,000.[3] The Trial Court then divided this amount by sixty ($670,000 ÷ 60 = $11,166.67) to arrive at an amount Plaintiff would have paid each month, on average, had she leased the restaurant for a full five year term. The Trial Court then multiplied this monthly average of $11,166.67 times six (i.e., the number of months Plaintiff actually occupied the property) to arrive at a sum of $67,000. The Trial Court concluded this was the total amount Plaintiff should be required to pay for the six months she occupied the property. The Trial Court then subtracted the $67,000 from the $205,000 Plaintiff actually did pay,[4] and stated it was going to enter a judgment for Plaintiff in the amount of $138,000.

---

[3] The $7,000 of monthly rent for a period of sixty months would have totaled $420,000. The Trial Court then added to the $420,000 the initial down payment of $250,000, for a grand total of $670,000.

[4] On appeal, the parties do not contest the Trial Court's conclusion that Plaintiff actually paid $205,000, which included the initial down payment and the additional rent payments.

After coming up with the amount of the judgment it was going to award Plaintiff, the Trial Court went on to explain that it could not ascertain what the parties actually intended. According to the Trial Court:

> The evidence is just too contradictory. The documents from the lawyers are too contradictory. The best that I can do with the different, contradictory testimony that has been presented to me, the best that I can do is that which I suggested earlier, and that is … figuring out what the total that would have been payable over five years would have been.…
>
> * * * *
>
> [Defendant has] now got the use of the property, and the use of the property, you assume, is worth the rental value. So that over a period of five years, if he gets paid for her rental, he's got the use of the property for the remaining four years, six months.… He's made whole. He hasn't lost anything. He could re-rent the property.…

Both Plaintiff and Defendant appeal the final Judgment. Defendant raises two primary issues, which we quote:

1. Was it error to hold that a portion of the money paid for a Lease with Option to Purchase was to be returned to the optionee Plaintiff?

2. Was it error not to require full payment for the Lease with Option to Purchase as agreed upon by the parties?

Plaintiff claims she should have been awarded a return of the full $170,000 initial payment.

### Discussion

Our review of findings of fact by a trial court is *de novo* upon the record of the trial court, accompanied by a presumption of correctness, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Brooks v. Brooks,* 992 S.W.2d 403, 404 (Tenn. 1999). Review of questions of law is *de novo,* without a presumption of correctness. *See Nelson v. Wal-Mart Stores, Inc.,* 8 S.W.3d 625, 628 (Tenn. 1999).

As recently noted by our Supreme Court in *Doe v. HCA Health Services of Tennessee, Inc.*, 46 S.W.3d 191 (Tenn. 2001):

A contract "'must result from a meeting of the minds of the parties in mutual assent to the terms, must be based upon a sufficient consideration, free from fraud or undue influence, not against public policy and sufficiently definite to be enforced.'" *Higgins v. Oil, Chem., and Atomic Workers Int'l Union, Local # 3-677*, 811 S.W.2d 875, 879 (Tenn. 1991) (quoting *Johnson v. Central Nat'l Ins. Co. of Omaha,* 210 Tenn. 24, 34-35, 356 S.W.2d 277, 281 (Tenn. 1962) (citations omitted)). Indefiniteness regarding an essential element of a contract "may prevent the creation of an enforceable contract." *Jamestowne On Signal, Inc. v. First Fed. Sav. & Loan Ass'n*, 807 S.W.2d 559, 565 (Tenn. Ct. App. 1990) (citing *Hansen v. Snell*, 11 Utah 2d 64, 354 P.2d 1070 (1960)). A contract "'must be of sufficient explicitness so that a court can perceive what are the respective obligations of the parties.'" *Higgins*, 811 S.W.2d at 880 (quoting *Soar v. National Football League Players' Ass'n*, 550 F.2d 1287, 1290 (1st Cir. 1977)); *see also Restatement (Second) of Contracts* § 33(2) (1981) ("The terms of a contract are reasonably certain if they provide a basis for determining the existence of a breach and for giving an appropriate remedy.")

*HCA*, 46 S.W.3d at 196.

Even though Defendant testified at trial that Plaintiff never had an option, Defendant argues on appeal that Plaintiff did purchase an option and, as with all options, the parties never agreed that the money utilized to purchase the option would be returned to Plaintiff if the option was not exercised. Alternatively, and consistent with his trial testimony, Defendant argues there was no option and the $250,000 was paid for the privilege of being able to walk into a fully staffed and operational restaurant. While Plaintiff did maintain she had an option, we were unable to locate any testimony where Plaintiff claims to have paid any amount for the option, assuming one ever existed. In other words, even though Plaintiff claims she had an option, she testified the $170,000 went toward a down payment on the purchase of the property, not for an option. In short, neither party took the position, at least at the Trial Court level, that the $250,000 was a payment to purchase an option.

In any event, the Trial Court certainly was correct when it stated that the evidence presented at trial and the testimony of the parties was contradictory. Because of this, the Trial Court admitted it was unable to ascertain what the parties had intended. Neither can we. The Trial Court did not credit the testimony of one party over that of the other. Neither do we. Rather, the Trial Court found there were "misunderstandings, apparently, between the parties as to what was said, or what was meant, or what they really agreed to." The clear import of these findings by the Trial Court is that there was no meeting of the minds or mutual assent between the parties regarding what the initial payment of $170,000 actually was for and whether or not it was refundable.

Our primary concern with the Trial Court's Judgment is that it states Plaintiff had a "Lease with Option" even though the Trial Court found that there was no mutual assent between the parties. Without any "meeting of the minds of the parties in mutual assent to the terms. . .", there was no enforceable contract. *HCA*, 46 S.W.3d at 196. Nevertheless, the Trial Court went on to conclude that since Plaintiff believed she had an option (even though it was unenforceable and Defendant denied it ever existed), she should be required to pay for the option for the six months she occupied the property. We assume it is for this reason that the Trial Court, in its Judgment, stated Plaintiff had paid the $170,000 for a "Lease with Option." We believe the Trial Court erred in concluding there was a "Lease with Option". What the parties intended the initial payment of $170,000/$250,000 to be is clearly an essential term of either party's version of the claimed oral agreement. If there was no mutual assent as to this essential term, and the evidence does not preponderate against the Trial Court's finding that there was not, there was no enforceable contract. In other words, the parties never agreed that the initial payment was for a "Lease with Option", or for anything else for that matter.

We conclude the preponderance of the evidence does not weigh against the Trial Court's finding that there was no meeting of the minds or mutual assent between the parties regarding the intended purpose of the initial payment. Since there was no meeting of the minds in mutual assent on this essential term, there is no enforceable contract and the Trial Court erred in characterizing this non-agreement as a "Lease with Option." It is the Trial Court's characterization of the agreement as a Lease with Option which forms Defendant's primary argument on appeal. Defendant argues since the Trial Court concluded there was a Lease with Option between the parties, Plaintiff forfeits the initial payment because she did not exercise the option. Since we conclude the Trial Court's characterization was in error, we need not resolve this particular issue.

Having determined there was no enforceable contract between the parties, we now turn to the remaining issue of the amount of damages awarded by the Trial Court. While we believe the Trial Court erred in characterizing this non-agreement as a "Lease with Option", we also believe that the Trial Court ultimately reached the right result. Even though there was no enforceable contract between the parties, Defendant did have the use of Plaintiff's property for six months, and this aspect was addressed properly by the Trial Court. Since there was no enforceable agreement pursuant to which Defendant could retain the $170,000, Plaintiff is entitled to the return of these funds. However, as an offset, Defendant is entitled to the reasonable value of the use of the restaurant for the six-month period. As set forth in *HCA*, *supra*, when a contract is invalid or unenforceable, "the court may impose a contractual obligation when [a party ] will be unjustly enriched absent a quasi-contractual obligation." 46 S.W.3d at 197 (citations omitted). The *HCA* Court went on to state:

> A quantum meruit action is an equitable substitute for a contract claim pursuant to which a party may recover the reasonable value of goods and services provided to another if the following circumstances are shown:

-8-

(1)   There is no existing, enforceable contract between the parties covering the same subject matter;

(2)   The party seeking recovery proves that it provided valuable goods or services;

(3)  The party to be charged received the goods or services;

(4)   The circumstances indicate that the parties to the transaction should have reasonably understood that the person providing the goods or services expected to be compensated; and

(5) The circumstances demonstrate that it would be unjust for a party to retain the goods or services without payment.

*HCA*, 46 S.W.3d at 197-98 (quoting *Swafford v. Harris*, 967 S.W.2d 319, 324 (Tenn. 1998)).  In *HCA*, the Court remanded that case for a determination of the reasonable value of the medical goods and services at issue.  *Id*. at 198.

We believe all five circumstances listed above are applicable to this case, thereby entitling Defendant to reasonable compensation from Plaintiff for the use of the restaurant.  In the present case, unlike *HCA*, the Trial Court undertook a detailed calculation to arrive at a monthly rental amount which it concluded would make Defendant "whole" for Plaintiff's use of his restaurant.  On appeal, Defendant challenges the amount of the Judgment by arguing he is entitled to the full $170,000 plus an additional $80,000 because the parties agreed an initial down payment of $250,000 was required and this payment would be nonrefundable.  Plaintiff argues she is entitled to a refund of the full $170,000 because those funds were a down payment toward the purchase of the restaurant, an event which never occurred.  Neither party argues the Trial Court erred in its determination as to what would be a proper amount of rental value to compensate Defendant for the use of the restaurant.  Based on our review of the record, we conclude the preponderance of the evidence does not weigh against the Trial Court's conclusion that a reasonable rental value for Defendant's restaurant during the six-month period was $67,000.  The Trial Court correctly deducted this amount from the total payments of $205,000 made by Plaintiff to Defendant when awarding Plaintiff a judgment in the amount of $138,000.  Therefore, even though the Trial Court erred in finding there was a "Lease with Option" after correctly finding there was no meeting of the minds between the parties in mutual assent to the essential terms, this error did not prevent the Trial Court from reaching the correct result, and therefore, the judgment is affirmed.  *See Hutcherson v. Criner,* 11 S.W.3d 126, 136 (Tenn. Ct. App. 1999).

## **Conclusion**

The judgment of the Trial Court is affirmed, and this cause is remanded to the Trial Court for further proceedings as necessary, if any, consistent with this Opinion, and for collection of the costs below. Costs on appeal are assessed one-half against the Appellants, Daniel and Lorraine Cartwright, and their surety, and one-half against the Appellee, Anne Strickland.

_____

D. MICHAEL SWINEY, JUDGE