# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### February 2, 2010 Session

## BOBBY R. HOPKINS v. DOYLE K. RIGGS, ET AL.

**Appeal from the Chancery Court for Blount County**
**No. 04-081      W. Dale Young, Judge Sitting By Interchange**

**No. E2008-02811-COA-R3-CV - FILED APRIL 15, 2010**

Bobby R. Hopkins ("Hopkins") sued Doyle K. Riggs and Ruth Riggs[1] ("the Riggs") alleging, in part, that the Riggs had contracted to construct a road on the Riggs' property for Hopkins' use and had failed to construct an adequate road. The Riggs filed a motion for summary judgment and the Trial Court granted them summary judgment. The Riggs then sought attorney's fees pursuant to the parties' contract. The parties then reached an agreement with regard to attorney's fees, an agreement which the Riggs subsequently alleged was breached by Hopkins. The Riggs then filed a motion and the Trial Court entered an order granting the Riggs additional attorney's fees. Hopkins appeals to this Court raising issues regarding the grant of summary judgment and the award of attorney's fees. We affirm the grant of summary judgment, hold that the Riggs were entitled to an award of attorney's fees pursuant to the parties' contract, vacate the Trial Court's November 25, 2008 Order granting additional attorney's fees, and remand this case to the Trial Court for entry of an order that complies with the parties' August 6, 2008 agreement.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed, in part; Vacated, in part; Case Remanded**

D. MICHAEL SWINEY, J., delivered the opinion of the Court, in which HERSCHEL P. FRANKS, P.J., and JOHN W. MCCLARTY, J. joined.

Brandon K. Fisher, Clinton, Tennessee, for the appellant, Bobby R. Hopkins.

Linda G. Shown, Alcoa, Tennessee, for the appellees, Doyle K. Riggs and Ruth Riggs.

---

[1] Hopkins also sued William Lee Gribble, II, Kenneth M. Gribble, and Selena M. Gribble. Because none of these other defendants are involved in the appeal now before us and, for ease of reading only, we refer to the Riggs as the only defendants in this Opinion.

# OPINION

## Background

The suit now before us on appeal has a contentious and lengthy history. It arises out of a previous lawsuit in which Hopkins sued a number of individuals concerning access to a trailer park located on his real property. Although the Riggs were not parties to this earlier suit, they made an offer to the parties involved in that suit which resulted in a settlement of that suit. On January 14, 2003, the Trial Court entered an Agreed Order of Dismissal ("Agreed Order of Dismissal") of that suit which provided, in pertinent part:

This Matter Having Come before this Honorable Court upon announcement by all parties and the undersigned non-parties, who agree to be bound hereto, that they have settled and resolved the controversies which are the subject of this action, as is more fully set forth herein, and for other good cause shown, it is hereby Ordered, Decreed and Adjudged as follows:

1. All parties to this action and the undersigned non-parties, without making any admission of fact or liability of any kind or nature whatsoever, except as is specifically set forth herein, hereby agree and it is so ordered that, except for Ronald E. Harris and wife, Helen H. Harris, their lien holders, heirs, successors and assigns, they, from this time forward, shall have no easement, right of way, right of ingress, or right of egress across Lot No. 8 and/or Lot No. 9 of Acreage View Estates Subdivision. As described in the deeds of conveyance for Lot No. 8 and Lot No. 9 of Acreage View Estates, there shall be a twenty-five (25) foot right-of-way over Lot No. 8 of Acreage View Estates for the purposes of ingress and egress to Lot No. 9, but no further or otherwise. After sixty (60) days from the entry of this Agreed Order, Ronald E. Harris and wife, Helen H. Harris, and/or Aaron A. Andrew and wife, Geneva L. Andrew, jointly or severally, shall have the right to erect a barricade, or other barrier mechanism, across the driveway currently in use at any place on the driveway as located on Lot No. 9 such that use of said driveway by parties other than the Harrises and the Andrews is precluded.

2. The Plaintiffs, Hopkins and Musical, shall require their invitees, guests, lessees, and any other person or entity coming onto their property or in possession of or having use of the property currently owned by Hopkins to use the right-of-way and road provided to Hopkins and Musical across the property of Doyle K. Riggs, and wife, Ruth Riggs, from and after sixty (60) days from entry of this Order, and they shall require their invitees, guests, lessees and any

-2-

other person or entity coming onto their property or having use of their property to cease using the driveway across Lot No. 8 and Lot No. 9 of Acreage View Estates.

3. Doyle K. Riggs and wife, Ruth Riggs, having acquired all of the right title and interest in and to that certain real property of Leonard A. Shepherd and wife, Lisa L. Shepherd, including the right (if any) to use the aforesaid driveway, shall not use the alleged right-of-way across Lot No. 8 and Lot No. 9 of Acreage View Estates.

4. Except for the right to enforce the terms and provisions of this Order or the right to enforce the terms and provisions of the settlement agreements and documents executed in performance of the settlement, all claims and causes of action asserted in this action are hereby dismissed with prejudice as to the rebringing of the same.

* * *

6. In the event any provision of this Agreed Order or the settlement documents executed in conjunction herewith must be enforced by application to this Honorable Court, this Honorable Court may award any prevailing party a reasonable attorney's fee, and to the extent permitted by law, may issue any injunction or enforce the terms of this Agreed Order without requiring the posting of any bond.

* * *

8. It is expressly understood and agreed that Doyle K. Riggs and wife, Ruth Riggs have entered into this Agreed Order of Dismissal to settle doubtful and disputed claims for economical purposes, and they are making no factual admissions and are expressly denying any liability for any and all claims, demands, damages, actions, causes of action or suits of any kind or nature whatsoever, known or unknown, which have resulted or may in the future develop and pertain to the use and/or existence of the driveway twenty-five (25) foot wide from Janeway Drive across Lot No. 8 and Lot No. 9 of the Acreage View Estates and the existence and/or use of the easement known as Ruth Riggs Way.

9. Bobby R. Hopkins shall maintain the twenty-five (25) foot wide easement for ingress and egress to his currently existing property, such

easement running over the property of Doyle K. Riggs and Ruth Riggs and along a new road beginning at Hutton Ridge Road, thence along a curve and continuing to the road known as Ruth Riggs Way and running in a straight direction parallel with a fence. Such easement inures to the benefit and use by Bobby R. Hopkins, his guests and visitors of his property of record in Warranty Deed Book 606, page 191 and Warranty Deed Book 615, page 656, and such easement shall not be extended to other properties.

In addition to the Agreed Order of Dismissal, Hopkins, the Riggs, and others also executed an Agreement which provided, in pertinent part:

5. Riggs and Hopkins shall enter into an Easement Agreement (attached hereto as Exhibit C) wherein access to Hopkins['] property will be granted across Riggs' property for the purpose of ingress and egress to Hopkins' property, with Hopkins to be solely responsible for maintenance of such easement unless property owners other than Riggs become entitled to use such easement.

The Riggs executed an Easement Agreement granting to Hopkins a twenty-five foot wide easement for ingress and egress over property owned by the Riggs "and running along a new road beginning at Hutton Ridge Road, thence along a curve and continuing to the road known as Ruth Riggs Way and running in a straight direction parallel with a fence to [Hopkins'] property of record…."

In June of 2004, Hopkins sued the Riggs alleging, among other things, that the Riggs had agreed to construct a new road for Hopkins and that the Riggs had failed to provide an adequate road that could be used by Hopkins and his guests and invitees. The Riggs answered the complaint denying, among other things, the allegations with regard to construction of the road and alleging in a counter-claim, in part, that Hopkins had failed to maintain properly the easement granted to him by the Riggs.

The Riggs filed a motion for summary judgment supported by, among other things, the affidavit of Robert Abbott which states, in pertinent part:

2. I am the Engineering Director for the Blount County Highway Department. I have worked with the Blount County Highway Department for twenty[-]seven years. In my position as Engineering Director, I am familiar with the minimum standards for road construction in Blount County. We maintain and enforce road construction regulations for public and private roads built in Blount County.

-4-

3.  In August 2003, the department was contacted by someone who uses the easement which goes across the property at 5923 Hutton Ridge Road and provides ingress and egress to property owned by Bobby Hopkins that is used as a mobile home park.  This person complained about the difficulties in using the road.

4.  I and others in my department went out to view the road, and pulled maps and performed other necessary work to determined the circumstances surrounding this easement.

5.  As a result of this review, we have determined that the road which goes across the property situated at 5923 Hutton Ridge Road and provides for ingress and egress to property owned by Bobby Hopkins that is used for a mobile home park is not subject to any minimum standards or other road building regulations of our department.  It is a private road going across private property, and because no subdivision of property took place at the time that the road was put in, construction of the road was not subject to any regulations or minimum standards set by Blount County Highway Department.

The Riggs also filed a copy of Hopkins's deposition testimony.  During the deposition, Hopkins testified about the Agreed Order of Dismissal explaining that during the first suit the Trial Court Judge:

> informed us that we were all suing the wrong people, that we needed to sue Doyle Riggs, that he was the responsible party in this case.…  Well, Mr. Riggs stood up at this time and told him that he could solve this problem by building us a new road and giving us an easement through his property and sell me the property and eliminate the whole situation that we were in.

When asked what his understanding of the agreement entered into was, Hopkins stated:

> That I'd get a road better than what I had and that I'd be able to bring my invitees in, my mobile homes, and my kin folks, and then I would be able to buy lot number three and I could put two trailers on it, and after I bought it, I would buy the remaining ten acres of his property.

Hopkins was asked if he had worked with the Riggs in getting all the details handled as to when and where the road was to be constructed and Hopkins replied, "No." He stated: "I watched while they were building this road and told them, you know, what I agreed on and what I didn't agree on."  Hopkins testified that he watched and informed the

people building the road that they were putting it in the wrong place. He told them that the road was supposed to be parallel to the fence instead of following the old tractor road. When asked if he had insisted that the road be put in where it eventually was, Hopkins stated: "That's what we agreed on in court." Further, he agreed that he made sure that it was laid out that way.

Hopkins testified that he has problems with the grade of the road and stated: "We've got a hill that's like a 37 grade that the county says is supposed to be 13 at the max and there's no drainage and there's no culverts on this road and when it rains, the whole hill washes away." When asked, Hopkins agreed that the grade of the road is the way it is because he directed that the road be put in where it is and stated: "That was the agreement where the road would be."

Hopkins wants the easement to be wider than 25 feet at the point where it meets Hutton Ridge Road. He testified:

Well, I'm not an engineer and the way they engineered it, they said that it would be a 30-foot radius on one side and a 60-foot radius on the other side. Ed of the road commission said it would take that to get a mobile home in there. He said that's what it would have to be.

When asked if there was any other agreement for the Riggs to construct a road other than the Agreed Order of Dismissal, Hopkins replied: "None that I know of." Hopkins, however, insisted that he had a verbal agreement for the Riggs to construct a road entered into when they were in court entering into the Agreed Order of Dismissal. He stated: "This all happened at the same time in court when we agreed and everything."

Hopkins admitted that he and Doyle Riggs never discussed the base of the road, whether it would be asphalt or gravel, nor what the Riggs would pay to construct the road. Hopkins further agreed that the entire road was to be built upon property owned by the Riggs. Hopkins conceded that he had agreed to maintain the easement. When asked what there was for him to maintain, he replied: "A road…. It come from Hutton Ridge to my property."

Hopkins also claimed that he and Doyle Riggs entered into a verbal contract on March 12, 2002, approximately ten months before the entry of the Agreed Order of Dismissal, during a discussion at the Riggs' house. He explained:

A year before we ever built the road, I was at this house and I took that letter up there from Virginia Crouch that she and Andrews they said that they was suing me and Doyle. And I took that up there and that's when he told me, he

says, well, we'll eliminate this problem.

He said if worse comes to worse, we'll just build a new road. And he said we'll come on that side of the house. He said you can't come down this side and said we'll just curve it in. And asked me if I'd still buy the property and I said yes.

And that's when I told him I'd have to, you know, buy lot three and put a couple of trailers on it or I couldn't buy that all at one time. And I said after I did that, I'd buy the rest of this and I'd have a good road, you know, and wouldn't have no problems, and he just moved to Madisonville.

Hopkins then stated that the easement agreement shows "what we agreed on." When asked, Hopkins admitted that during this conversation when they made the alleged verbal agreement, he and Doyle Riggs did not agree on any other terms of the contract and that nothing was put into writing. Hopkins agreed that during their conversation he and Doyle Riggs did not agree for the Riggs to get permits, did not agree on anything with regard to drainage, did not agree about meeting zoning regulations, did not agree about what type of gravel would be used, did not agree about the grade of the road, did not agree that the road would be safe and usable, and did not agree as to when the road would be completed.

By order entered February 28, 2007, the Trial Court granted the Riggs summary judgment. The Riggs then filed a motion seeking an award of attorney's fees and discretionary costs pursuant to the Agreed Order of Dismissal. By order entered December 14, 2007, the Trial Court ordered Hopkins to pay the Riggs' attorney's fees in the amount of $36,720 plus ten percent interest and further ordered Hopkins to pay discretionary costs of $2,428 plus ten percent interest.

On February 26, 2008, the Trial Court entered a Final Judgment Between Plaintiff Bobby R. Hopkins and Defendants Doyle K. Riggs and Wife, Ruth Riggs pursuant to Tenn. R. Civ. P. 54.02. Hopkins moved to set aside the February 26, 2008 judgment alleging that the Riggs' counter-complaint had "not been disposed of by any Motion or pleading by any party and remains an issue to be decided between Plaintiff Bobby R. Hopkins and Defendants Doyle K. Riggs and wife, Ruth Riggs." The Riggs filed a motion for sanctions. Hopkins also filed an appeal with this Court, which subsequently was dismissed.

On August 6, 2008, the parties were able to reach an agreement with regard to the pending motion to set aside the February 26, 2008 judgment and the pending motion for sanctions. This agreement was memorialized in a transcript and the Trial Court entered an

order on August 22, 2008 finding and holding that the parties had agreed to dismiss the motion to set aside the final judgment and the motion for sanctions, and dismissing these motions with prejudice.

In pertinent part, the Agreement entered into by the parties on August 6, 2008 ("August 6, 2008 Agreement") provides:

Today a check will be written by Bobby R. Hopkins in the amount of twenty thousand dollars and no cents made payable to Doyle and Ruth Riggs. The sum of fifteen hundred dollars will be paid by Bobby R. Hopkins to Doyle and Ruth Riggs by September 6th at 12:00 p.m. midnight. Time is of the essence, or on September 7, 2008 an entry of twenty-seven thousand eight hundred dollars no cents plus ten percent statutory interest will be entered as a judgment with no right of appeal and immediate execution shall issue.

The appeal of Bobby Hopkins to the Appellate Court in this matter will be dismissed effective today, and counsel for Mr. Hopkins will file the necessary paperwork to have that appeal dismissed. Doyle and Ruth Riggs shall agree to release the lien on the property of Bobby R. Hopkins.

* * *

And [Hopkins' attorney] will forward to [the Riggs' attorney] the release that they're requesting Doyle and Ruth Riggs to sign, and assuming that that will be acceptable, then the Riggs will sign that immediately and it will be forwarded back to [Hopkins' attorney] for recording in the Blount County Register of Deeds office.

All court costs will be taxed to Bobby R. Hopkins, and the court reporter fee today will be shared between Bobby R. Hopkins and Doyle and Ruth Riggs.

Is that your understanding, [Hopkins' attorney]?

[HOPKINS' ATTORNEY]: It is, and I just want to clarify that the twenty-seven thousand eight hundred judgment, which we don't anticipate being entered, but if it is entered, that overtakes the previous judgment for attorney's fees in this case.

[THE RIGGS' ATTORNEY]: That is correct, because we are receiving

-8-

twenty thousand dollars today.

After the terms of the agreement were announced, Hopkins and the Riggs were sworn in and each was asked if they understood and agreed with those terms and all parties stated that they understood and agreed. The same day the agreement was memorialized, Hopkins presented two checks made out to the Riggs, one in the amount of $4,500 and one in the amount of $15,500, which together totaled $20,000.

The check in the amount of $15,500 which Hopkins provided to the Riggs on August 6, 2008 was returned for insufficient funds. On August 20, 2008, the Riggs filed a motion seeking to enforce the parties' August 6, 2008 agreement. In this motion, the Riggs requested a judgment against Hopkins in the amount of $43,300. Hopkins delivered a check for $17,000 to the Riggs' attorney by having the check slipped under the attorney's office door on September 5, 2008. The Trial Court held a hearing and entered an order on September 8, 2008[2] finding and holding, *inter alia*, that Hopkins had materially and willfully breached the parties' August 6, 2008 agreement by presenting a check for $15,500 which was returned for insufficient funds, and that the Riggs shall have a judgment against Hopkins for $44,800 plus statutory interest of ten percent with a credit of $17,000 for the payment that Hopkins delivered to the Riggs' attorney on September 5, 2008. The Trial Court certified the September 8, 2008 judgment as a final judgment pursuant to Tenn. R. Civ. P. 54.02.

On November 10, 2008, Hopkins filed a motion to set aside the order entered September 8, 2008 or, in the alternative, to enforce the August 6, 2008 Agreement. On November 25, 2008, the Trial Court entered an order modifying its September 8, 2008 order and holding that the Riggs shall have a judgment against Hopkins in the amount of $34,433.81 plus post-judgment interest of ten percent per annum. The Trial Court certified the November 25, 2008 order as a final judgment pursuant to Tenn. R. Civ. P. 54.02.

On December 23, 2008, Hopkins filed a motion to reconsider or, in the alternative, for clarification. The Trial Court denied this motion by order entered April 22, 2009 finding that a motion to reconsider is not authorized and that no clarification was necessary. Hopkins then filed this appeal to this Court.

**Discussion**

Although not stated exactly as such, Hopkins raises five issues on appeal: 1)

---

[2]The order actually was signed and entered by the Trial Court on September 9, 2008. The parties and the Trial Court, however, all refer to this order as the September 8, 2008 order. For the sake of continuity, we will refer to this order as the September 8, 2008 order.

whether the Trial Court erred in certifying the November 25, 2008 order as a final judgment; 2) whether the Trial Court erred in granting summary judgment to the Riggs; 3) whether the Trial Court erred in awarding to the Riggs attorney's fees in its December 14, 2007 order; 4) whether the Trial Court erred in awarding to the Riggs additional attorney's fees in its September 8, 2008 order as modified by the November 25, 2008 order; and, 5) whether the award of attorney's fees is excessive. The Riggs move this Court to take notice of "the post judgment settlement agreement entered into by the parties, pursuant to Rule 14, T.R.A.P. and attached hereto as Exhibit 2 and in the Technical Record at Vol. VI." The Riggs also raise an issue regarding whether this appeal should be deemed frivolous as Hopkins waived his right to appeal in the August 6, 2008 Agreement, and request an award of attorney's fees on appeal.

We first address the issue of whether the Trial Court erred in certifying the November 25, 2008 order as a final judgment. Hopkins asserts in his brief on appeal that the Riggs filed a counter-claim that "never reached disposition" and for this reason the Trial Court erred in certifying the judgment as a final judgment. Interestingly, a careful and thorough review of the record on appeal reveals that on July 19, 2007, Hopkins filed a Motion to Dismiss Counter-Complaint which alleged, in pertinent part:

> 1. The Counter-Complaint does not state a claim on which relief can be granted pursuant to Rule 12 of the Tennessee Rules of Civil Procedure.
>
> 2. In the alternative, [Hopkins] would show that the Counter-Complaint prays for no action on behalf of [Hopkins]. Rather, the only action requested is that [Hopkins] be required to maintain a road. Without judgment requested against [Hopkins], the Counter-Complaint seeks nothing from Counter-Defendant Bobby Hopkins and should be dismissed.

More importantly, however, the Trial Court specifically certified its November 25, 2008 order as a final judgment stating:

> Notwithstanding that there are other issues related to other parties in this case, the Court directs that this Judgment finalizes all claims between [P]laintiff and Defendants Riggs and is a final judgment under Rule 54.02 of the Tennessee Rules of Civil Procedure., [sic] and the Court makes the express determination that there is no just reason for delay.

Thus, the Trial Court ruled upon all issues before it with regard to these parties and implicitly dismissed the counter-complaint. The Riggs raise no issue regarding the dismissal of their counter-complaint. The Trial Court complied with Tenn. R. Civ. P. 54.02 and properly

certified the November 25, 2008 order as a final judgment. This issue is without merit.

We next consider whether the Trial Court erred in granting summary judgment to the Riggs. Our Supreme Court reiterated the standard of review in summary judgment cases as follows:

> The scope of review of a grant of summary judgment is well established. Because our inquiry involves a question of law, no presumption of correctness attaches to the judgment, and our task is to review the record to determine whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied. *Hunter v. Brown*, 955 S.W.2d 49, 50-51 (Tenn. 1997); *Cowden v. Sovran Bank/Cent. S.*, 816 S.W.2d 741, 744 (Tenn. 1991).
>
> A summary judgment may be granted only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Tenn. R. Civ. P. 56.04; *Byrd v. Hall*, 847 S.W.2d 208, 214 (Tenn. 1993). The party seeking the summary judgment has the ultimate burden of persuasion "that there are no disputed, material facts creating a genuine issue for trial . . . and that he is entitled to judgment as a matter of law." *Id.* at 215. If that motion is properly supported, the burden to establish a genuine issue of material fact shifts to the non-moving party. In order to shift the burden, the movant must either affirmatively negate an essential element of the nonmovant's claim or demonstrate that the nonmoving party cannot establish an essential element of his case. *Id.* at 215 n.5; *Hannan v. Alltel Publ'g Co.*, 270 S.W.3d 1, 8-9 (Tenn. 2008). "[C]onclusory assertion[s]" are not sufficient to shift the burden to the non-moving party. *Byrd*, 847 S.W.2d at 215; *see also Blanchard v. Kellum*, 975 S.W.2d 522, 525 (Tenn. 1998). Our state does not apply the federal standard for summary judgment. The standard established in *McCarley v. West Quality Food Service*, 960 S.W.2d 585, 588 (Tenn. 1998), sets out, in the words of one authority, "a reasonable, predictable summary judgment jurisprudence for our state." Judy M. Cornett, *The Legacy of Byrd v. Hall: Gossiping About Summary Judgment in Tennessee*, 69 Tenn. L. Rev. 175, 220 (2001).
>
> Courts must view the evidence and all reasonable inferences therefrom in the light most favorable to the non-moving party. *Robinson v. Omer*, 952 S.W.2d 423, 426 (Tenn. 1997). A grant of summary judgment is appropriate only when the facts and the reasonable inferences from those facts would permit a reasonable person to reach only one conclusion. *Staples v. CBL & Assocs., Inc.*, 15 S.W.3d 83, 89 (Tenn. 2000). In making that assessment, this

Court must discard all countervailing evidence. *Byrd*, 847 S.W.2d at 210-11. Recently, this Court confirmed these principles in *Hannan*.

*Giggers v. Memphis Hous. Auth.*, 277 S.W.3d 359, 363-64 (Tenn. 2009).

The Trial Court interpreted the contract at issue in this case, i.e., the Agreed Order of Dismissal. As this Court explained in *Kafozi v. Windward*:

> In resolving a dispute concerning contract interpretation, our task is to ascertain the intention of the parties based upon the usual, natural, and ordinary meaning of the contract language. *Planters Gin Co. v. Fed. Compress & Warehouse Co., Inc.*, 78 S.W.3d 885, 889-90 (Tenn. 2002)(citing *Guiliano v. Cleo, Inc.*, 995 S.W.2d 88, 95 (Tenn. 1999)). A determination of the intention of the parties "is generally treated as a question of law because the words of the contract are definite and undisputed, and in deciding the legal effect of the words, there is no genuine factual issue left for a jury to decide." *Planters Gin Co.*, 78 S.W.3d at 890 (citing 5 Joseph M. Perillo, *Corbin on Contracts*, § 24.30 (rev. ed. 1998); *Doe v. HCA Health Servs. of Tenn., Inc.*, 46 S.W.3d 191, 196 (Tenn. 2001)). The central tenet of contract construction is that the intent of the contracting parties at the time of executing the agreement should govern. *Planters Gin Co.*, 78 S.W.3d at 890. The parties' intent is presumed to be that specifically expressed in the body of the contract. "In other words, the object to be attained in construing a contract is to ascertain the meaning and intent of the parties as expressed in the language used and to give effect to such intent if it does not conflict with any rule of law, good morals, or public policy." *Id*. (quoting 17 Am. Jur. 2d, *Contracts*, § 245).

> This Court's initial task in construing the Contract at issue is to determine whether the language of the contract is ambiguous. *Planters Gin Co.*, 78 S.W.3d at 890. If the language is clear and unambiguous, the literal meaning of the language controls the outcome of the dispute. *Id*. A contract is ambiguous only when its meaning is uncertain and may *fairly* be understood in more than one way. *Id*. (emphasis added). If the contract is found to be ambiguous, we then apply established rules of construction to determine the intent of the parties. *Id*. Only if ambiguity remains after applying the pertinent rules of construction does the legal meaning of the contract become a question of fact. *Id*.

*Kafozi v. Windward Cove, LLC*, 184 S.W.3d 693, 698-99 (Tenn. Ct. App. 2005).

We begin our analysis of this issue by noting that although Hopkins asserts that he had an oral contract with the Riggs, he admitted that there had been no agreement regarding any of the details or particulars regarding the construction of the road, and further admitted that what he and the Riggs had agreed to was memorialized in the Agreed Order of Dismissal. Hopkins testified that during the conversation that he had with Doyle Riggs prior to the entry of the Agreed Order of Dismissal, Doyle Riggs stated: "if worse comes to worse, we'll just build a new road." Hopkins, however, admitted that whatever he and Doyle Riggs agreed to during that conversation was memorialized in the Easement Agreement entered into by the parties pursuant to the Agreed Order of Dismissal. Furthermore, a vague statement such as "if worse comes to worse" is insufficient to support the assertion that a contract was formed based upon this language. Hopkins testified that despite his assertions of an oral contract, he and the Riggs never reached any agreement whatsoever with regard to any details of constructing a road and, as such, any such alleged oral agreement is simply too vague to constitute a contract. Further, Hopkins admitted that the agreement reached between him and Doyle Riggs was memorialized in the Agreed Order of Dismissal and the Easement Agreement entered into by the parties in connection therewith. Therefore, the assertion that an oral contract for the construction of the road exists is without merit.

With regard to the contract embodied in the Agreed Order of Dismissal, we begin by noting that the contract is not ambiguous. As such, we must look to the literal meaning of the words of the contract to determine the intention of the parties. In the Agreed Order of Dismissal, Hopkins agreed, as pertinent to this issue, "to use the right-of-way and road provided to Hopkins and Musical across the property of Doyle K. Riggs, and wife, Ruth Riggs, from and after sixty (60) days from entry of this Order…;" to require his invitees, guests, and lessees to use this road; and to maintain this road. The Riggs agreed, with regard to this issue, to grant Hopkins a "twenty-five (25) foot wide easement for ingress and egress to his currently existing property, such easement running over the property of Doyle K. Riggs and Ruth Riggs and along a new road beginning at Hutton Ridge Road, thence along a curve and continuing to the road known as Ruth Riggs Way and running in a straight direction parallel with a fence."

Nowhere in the Agreed Order of Dismissal does it provide any specifics stating that the Riggs had agreed to build a road of any type. Rather, the Agreed Order of Dismissal clearly and unambiguously states that the Riggs agreed to provide an easement that could be used for ingress and egress, which they did. The Riggs did not agree to construct a road. We find, as did the Trial Court, that there are no genuine issues of material fact in dispute and that the Riggs are entitled to summary judgment as a matter of law.

Next we consider whether the Trial Court erred in awarding to the Riggs attorney's fees in its December 14, 2007 order. The Agreed Order of Dismissal clearly and

unambiguously provides: "In the event any provision of this <u>Agreed Order</u> or the settlement documents executed in conjunction herewith must be enforced by application to this Honorable Court, this Honorable Court may award any prevailing party a reasonable attorney's fee …." Hopkins attempted to enforce the Agreed Order of Dismissal by application to the Trial Court and, therefore, the Trial Court may award attorney's fees to "any prevailing party" in this action. As Hopkins attempted to enforce the Agreed Order of Dismissal and the Riggs prevailed in the suit when they were granted summary judgment, we fail to see how Hopkins can now assert that the Riggs may not be awarded attorney's fees pursuant to the Agreed Order of Dismissal. As the Trial Court may award the Riggs attorney's fees pursuant to the parties' contract, we need not discuss whether an award would be proper on equitable grounds.

We next consider whether the Trial Court erred in awarding to the Riggs additional attorney's fees in its September 8, 2008 order as modified by the Trial Court's November 25, 2008 order. The record on appeal reveals that Hopkins and the Riggs reached an agreement with regard to the Trial Court's December 14, 2007 order, which ordered that the Riggs had a judgment against Hopkins for $36,720 in attorney's fees, and $2,428 in costs, plus statutory interest on both amounts. The agreement reached by the parties was memorialized in the August 6, 2008 Agreement. In pertinent part, the August 6, 2008 Agreement provided that if Hopkins failed to deliver by September 6, 2008 the monies as specified, then a judgment would be entered in the amount of $27,800, plus ten percent statutory interest. Hopkins did fail to deliver the monies as specified when one of the checks that he provided on August 6th as required by the August 6, 2008 Agreement was returned for insufficient funds. Thus, as per the parties' August 6, 2008 Agreement, a judgment of $27,800 plus statutory interest should have been entered.

The August 6, 2008 Agreement did not, however, provide for any further awards of attorney's fees incurred in enforcing the August 6, 2008 Agreement. Thus, the Riggs were not entitled to an award of additional attorney's fees in the September 8, 2008 order, or in any subsequent orders enforcing the parties' August 6, 2008 Agreement. The September 8, 2008 order did not enforce the Agreed Order of Dismissal, which already had been enforced by the August 6, 2008 Agreement. Rather, the September 8, 2008 order enforced the parties' August 6, 2008 Agreement which did not provide for any further award of attorney's fees to any party.

Therefore, we vacate the Trial Court's November 25, 2008 order and remand this case to the Trial Court for entry of an order which complies with the parties' August 6, 2008 Agreement, with credit to be given for amounts already paid by Hopkins. Neither party is entitled to attorney's fees in connection with the order which we hereby direct the Trial Court to enter.

-14-

Next we consider whether the award of attorney's fees was excessive. Given that we have vacated the Trial Court's November 25, 2008 order awarding additional attorney's fees, this issue is pretermitted with regard to the attorney's fees awarded in that order. As for the first order awarding attorney's fees, i.e., the December 14, 2007 order, Hopkins and the Riggs reached an agreement with regard to it, the August 6, 2008 Agreement. In the August 6, 2008 Agreement, Hopkins and the Riggs agreed as to amounts that Hopkins would pay to the Riggs. As Hopkins freely and voluntarily agreed to the amounts he would pay in lieu of the December 14, 2007 order, he cannot now claim that the amount of attorney's fees awarded by this order was excessive. This issue is without merit.

We next consider the Riggs' motion requesting that this Court take notice of the post-judgment settlement agreement entered into by the parties. This so called post-judgment settlement agreement to which the Riggs refer is the August 6, 2008 Agreement, which is not a post-judgment settlement. As it already had properly been included in the record on appeal, we are puzzled as to why the Riggs felt it was necessary to ask this Court to take notice of this agreement. As the August 6, 2008 Agreement was properly included in the record on appeal and has been considered by this Court as discussed fully above, this motion is moot.

Finally, we consider the issue raised by the Riggs of whether this appeal should be deemed frivolous as Hopkins waived his right to appeal in the August 6, 2008 Agreement. "'A frivolous appeal is one that is 'devoid of merit,' or one in which there is little prospect that [an appeal] can ever succeed.'" *Morton v. Morton*, 182 S.W.3d 821, 838 (Tenn. Ct. App. 2005) (quoting *Industrial Dev. Bd. of the City of Tullahoma v. Hancock*, 901 S.W.2d 382, 385 (Tenn. Ct. App. 1995)).

The assertion that Hopkins waived his right to appeal in the August 6, 2008 Agreement is correct insofar as Hopkins waived his right to appeal a judgment put down in compliance with the August 6, 2008 Agreement. As discussed above, however, the November 25, 2008 order did not comply with the parties' August 6, 2008 Agreement. As such, Hopkins did not waive his right to appeal the November 25, 2008 final order. Furthermore, the Riggs assert that Hopkins waived his right to appeal the grant of summary judgment by virtue of the August 6, 2008 Agreement. This assertion is incorrect. The August 6, 2008 Agreement clearly and unambiguously provides that Hopkins waived his right to appeal entry of a judgment in the amount of $27,800 plus ten percent statutory interest. Such a judgment never was entered. Hopkins did not waive his right to appeal any other judgment. As such, we find that Hopkins did not waive his right to appeal the issues now before us. As Hopkins has prevailed, albeit partially in this appeal, in the sense that this Court has vacated the November 25, 2008 order, we decline to find this appeal frivolous and further decline to award any attorney's fees on appeal.

## Conclusion

The judgment of the Trial Court is affirmed as to the grant of summary judgment to the Riggs. The judgment of the Trial Court is vacated as to the November 25, 2008 order awarding additional attorney's fees to the Riggs, and this cause is remanded to the Trial Court for entry of an order which complies with the parties' August 6, 2008 Agreement, and for collection of the costs below. The costs on appeal are assessed one-half against the appellant, Bobby R. Hopkins and his surety; and one-half against the appellees, Doyle K. Riggs and Ruth Riggs.

_____
D. MICHAEL SWINEY, JUDGE