IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
August 23, 2012 Session

**COFFEE COUNTY BANK v. ROBERT EUGENE HULAN AND SHERRY
RENEE HULAN**

**Appeal from the Chancery Court for Coffee County**
**No. 10271 2010CV347      Vanessa Jackson, Judge**

_____

**No. M2012-00109-COA-R3-CV - Filed January 30, 2013**

_____

A bank filed a complaint against husband and wife to recoup money owed on a credit agreement after a foreclosure sale failed to produce sufficient funds to repay the loan in full. The trial court entered a judgment against the couple, and the couple appealed. We reverse the trial court's judgment because the bank relied on two different versions of a credit agreement, thereby failing to prove the existence of an enforceable contract with definite terms.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed**

PATRICIA J. COTTRELL, P.J., M.S., delivered the opinion of the Court, in which ANDY D. BENNETT and RICHARD H. DINKINS, JJ., joined.

Robert Eugene Hulan, Sherry Renee Hulan, Morrison, Tennessee, Pro Se.

Christopher Brent Keeton, Shawn Carter Trail, Manchester, Tennessee, for the appellee, Coffee County Bank.

**OPINION**

**I. BACKGROUND**

Coffee County Bank (the "Bank") filed a Complaint against Robert Eugene Hulan and Sherry Renee Hulan (together, the "Hulans") in July 2010 seeking a judgment in the amount of $4,448.18, in addition to interest and attorney's fees, for the balance owed on a promissory note. In December 2009 the Bank foreclosed on property the Hulans owned that secured the Bank's loan, and the Bank alleged the highest bid at the foreclosure sale was $4,448.18 less than the amount then owing on the note.

Mr. Hulan filed an Answer in which he denied the Bank was in possession of the promissory note described in its Complaint and "demand[ed] strict proof of original document thereof with ink signatures shown . . . ."

The case proceeded to trial on June 14, 2011. Mr. Hulan was involved in a car accident the morning of June 14 and was taken to the hospital as a result of injuries he suffered. He informed the trial court that he was not able to make it to the courthouse for the trial, but the court proceeded to hold the trial in his absence. Mrs. Hulan did not participate in the trial. The record does not include a transcript of the proceedings from June 14, but the record includes the exhibits introduced at the trial. The first exhibit introduced was a photocopy of a document entitled "Revolving Line of Credit Agreement." The Borrowers were identified as "Robert E Hulan" and "Sherry Hulan." In the section called "Finance Charge" the document provided: "Fixed Interest Rate of xxxxxx    9.25%." A close inspection of the document reveals the x's were placed on top of another rate of "15.00%." This document includes what appear to be photocopies of Mr. Hulan's and Mrs. Hulan's signatures on the final page of the credit agreement. Oddly enough, the Bank also introduced into evidence a document entitled "Loan Ledger" that identifies the "Interest Rate" as "18.0000%."

The trial court entered an Order on August 26, 2011, that included the following:

1.      Prior to the start of Court the clerk informed the Court that Defendant Robert Eugene Hulan had called earlier in the morning stating that he had been involved in a single car accident and did not want to attend Court, but could if the Judge did not excuse him. The clerk having been ordered by the Court to do so made several unsuccessful attempts to contact the Defendants, at the number left by Defendant Robert Eugene Hulan, to inform them they were not excused and ultimately left a voicemail telling them the same.

2.      The Defendants Robert Eugene Hulan and wife, Sherry Renee Hulan, were not present when the matter was called, nor was anyone present on their behalf. The Defendants knew of the scheduled hearing, knew to be present if they wished to be heard, and did not give sufficient notice as to why they were not present;

3.      Plaintiff put on sufficient proof to satisfy its cause of action;

4.      Robert Eugene Hulan and wife, Sherry Renee Hulan, [are] liable, jointly and severally, to Coffee County Bank in the principal amount of $5,612.98, plus actual attorney's fees of $2,287.50 and costs of this cause; and

5.      Defendant Robert Eugene Hulan filed what the Court deemed to be a Motion to Reconsider prior to the June 14, 2011 Order being signed by the Court, and having reconsidered it in a hearing on August 15, 2011, at which time the Court found that the judgment entered against Robert Eugene Hulan on June 14, 2011 should be set aside and the case rescheduled for hearing on October 10, 2011, but nothing having been filed by Sherry Renee Hulan, the judgment announced on June 14, 2011 is reaffirmed by the Court.

The trial against Mr. Hulan took place on November 10, 2011. As with the June 14 trial, the record does not include a transcript of the November 10 trial, but the record includes the exhibits introduced. The first exhibit appears to be the original Revolving Line of Credit Agreement. A comparison of this original credit agreement with the photocopy introduced at the June 14 trial reveals significant differences. The account number, credit limit, and dates are the same, but the Borrowers on the original document are identified as "Robert E Hulan" and "Robert Hulan." The original agreement does not identify Mrs. Hulan anywhere as a Borrower. The section called "Finance Charge" is also different from the photocopy introduced on June 14. The original agreement provides for a "Fixed Interest Rate of 9.25%." There are no x's covering up a different rate of interest as in the photocopied version introduced on June 14. The original agreement introduced at the November 10 trial appears to include the original signatures of Mr. and Mrs. Hulan. Finally, the Bank introduced the same "Loan Ledger" as an exhibit at the November 10 trial that it introduced at the June 14 trial indicating that the interest rate applicable to the money the Bank disbursed to the Hulans pursuant to the credit agreement was 18.0000%.[1]

The trial court entered an Order on December 6, 2011, in which it wrote:

This cause came to be heard on the 10th day of November, 2011, before the Honorable Vanessa Jackson, Judge, sitting at Chancellor, upon the Complaint filed by COFFEE COUNTY BANK, the Answer filed by the co-defendant, ROBERT EUGENE HULAN, and the entire record in this cause, including a August 26, 2011, Order that entered a judgment for $5,612.98, plus $2,287.50 attorney's fees and court cost against his co-defendant, SHERRY RENEE

---

[1]Another exhibit introduced at the November 10 trial was an Affidavit by Kenneth C. Kirby, who was a Bank employee. Mr. Kirby swore in his affidavit that the document attached was a "true and perfect copy of the Revolving Line of Credit Agreement executed by Robert E. Hulan and Sherry Hulan found in the loan file" at the Bank. The version of the credit agreement attached to Mr. Kirby's affidavit, however, was the photocopied version introduced at the June 14 trial rather than a photocopy of the original credit agreement introduced at the November 10 trial.

HULAN, individually, which concluded the matter as to her, and from all of which the Court finds that the plaintiff should now be awarded a judgment against the defendant, ROBERT EUGENE HULAN, for $5,939.83, plus $1,484.96 attorney's fees and costs of this cause, the judgments to be joint and several but payment on one credited against the other . . . .

The Hulans filed a document called "Perpetual Void Judgment" on December 12 in which they alleged the trial court's Order dated December 6 was void due to fraud, violation of due process, improper issuance of a summons, and other reasons not relevant to this appeal. The trial court entered an Order on December 20 explaining that it was treating the Hulans' filing as a motion for a new trial. The trial court then denied the Hulans' request. The Hulans each duly filed a Notice of Appeal on January 3, 2012, in which they each identified the trial court's Order dated December 20, 2011, as the final judgment they were appealing.

## II. ISSUE ON APPEAL

The Hulans raise several issues on appeal, but the determinative issue is whether the Bank proved its case when it introduced two different versions of a credit agreement the Bank alleged was the operative contract.

Our review on appeal of the trial court's findings of fact is *de novo* with a presumption of correctness, unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d); *Blair v. Brownson*, 197 S.W.3d 681, 684 (Tenn. 2006); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001); *Hass v. Knighton,* 676 S.W.2d 554, 555 (Tenn. 1984). We review a trial court's conclusions of law *de novo*, with no presumption of correctness. *Whaley v. Perkins*, 197 S.W.3d 665, 670 (Tenn. 2006); *Union Carbide Corp. v. Huddleston,* 854 S.W.2d 87, 91 (Tenn. 1993).

Before addressing the merits of the Hulans' appeal, the Bank raises a procedural issue by questioning the adequacy of Mrs. Hulan's Notice of Appeal. The Bank contends the trial court's judgment against Mrs. Hulan was final when the court entered its Order on August 26, 2011, finding Mrs. Hulan liable to the Bank for the amount of $7,900.48. The Bank argues Mrs. Hulan should be precluded from appealing the judgment against her because she failed to file a timely notice of appeal within thirty days of the August 26 Order. We disagree with the Bank's position because all issues had not been decided when the trial court entered its Order on August 26. The Bank's case against Mr. Hulan had not yet been tried, and Mrs. Hulan was not required to file her Notice of Appeal until all issues were determined and a

-4-

final judgment was entered.[2]  The trial court did not enter a final Order until December 6, 2011, when it determined the liability of Mr. Hulan.  In fact, the trial court wrote in its Order dated December 20 that "[a] final Order was entered in this matter on December 7 [sic], 2011, after the Trial which was held on November 10, 2011."  Thus, Mrs. Hulan's appeal was timely.

Both the Hulans and the Bank presented the trial court with a Statement of Evidence, and the trial court adopted the version prepared by the Bank.  *See* Tenn. R. App. P. 24(c) (appellant is directed to prepare statement of evidence if no transcript of evidence is available, to which appellee may object, and trial court shall settle differences).  The trial court's determination of which Statement of Evidence most accurately reflects what transpired at trial is conclusive on the Court of Appeals.  Tenn. R. App. P. 24(e).

According to the Bank's Statement of Evidence, both Mr. and Mrs. Hulan signed a Revolving Line of Credit Agreement on August 29, 2007, with an expected maturity date of August 29, 2010.  The credit limit was $36,000 and the interest rate was 9.25%.  In support of these two statements the Bank cited to Exhibit 1 from the June 14 trial date and Exhibit 1 from the November 10 trial date.  These two exhibits are the original and photocopy versions of the credit agreement discussed above, which are not identical.  The original credit agreement does not identify Mrs. Hulan as a Borrower, and the applicable interest rate is reflected differently in the two versions.  The Bank neither acknowledged nor provided any explanation for the differences in these two documents.

The difference in these documents, and the Bank's reliance on both of these documents to prove its case, requires a reversal of the trial court's judgment in the Bank's favor.  A plaintiff alleging a breach of contract must prove the existence of an enforceable contract, nonperformance amounting to a breach, and damages resulting from the breach.  *BancorpSouth Bank, Inc. v. Hatchel*, 223 S.W.3d 223, 227 (Tenn. Ct. App. 2006); *Seramur v. Life Care Centers of Am., Inc.*, 2009 WL 890885, at *2 (Tenn. Ct. App. April 2, 1999).  A contract must have definite terms to be enforceable:

> A contract "must result from a meeting of the minds of the parties in mutual assent to the terms, must be based upon a sufficient consideration, free from

_____

[2]  Rule 3(a) of the Tennessee Rules of Appellate Procedure provides that unless an interlocutory appeal is sought or the court enters a final order as to one party upon a specific request,

> if multiple parties or multiple claims for relief are involved in an action, any order that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties is not enforceable or appealable and is subject to revision at any time before entry of a final judgment adjudicating all the claims, rights, and liabilities of all parties.

fraud or undue influence, not against public policy and sufficiently definite to be enforced."

*Doe v. HCA Health Serv. of Tennesee, Inc.*, 46 S.W.3d 191, 196 (Tenn. 2001) (quoting *Higgins v. Oil, Chem. and Atomic Workers Int'l Union*, 811 S.W.2d 875, 879 (Tenn. 1991)). If one or more essential elements of a contract is not definite, the contract may not be enforceable. *Doe*, 46 S.W.3d at 196 (citing *Jamestown On Signal, Inc. v. First Fed. Sav. & Loan Ass'n*, 807 S.W.2d 559, 565 (Tenn. Ct. App. 1990)).

The Bank had the burden to prove the existence of an enforceable contract. By relying on two different documents identifying different Borrowers, the Bank has failed to prove the existence of an enforceable contract and is not entitled to a judgment in its favor as a matter of law.

It is a general rule of interpretation of contracts that when the body of a contract purports to set out the names of the parties thereto and a person not named in the body of the contract signs the contract and nothing in the contract indicates that such person signed as a party, then such person is not bound as a party to the contract and is not liable thereunder.

*Brooks v. Networks of Chattanooga, Inc.*, 946 S.W.2d 321, 327 (Tenn. Ct. App. 1996).

The discrepancy in interest rate between the alleged credit agreements and the Loan Ledgers also lead us to conclude the Bank has failed to prove the existence of an enforceable contract. Although both versions of the credit agreement identify the rate of interest as 9.25%, the Loan Ledger the Bank introduced as an exhibit at both trials identify the rate of interest as 18.0000%. The Bank has neither acknowledged this discrepancy nor explained why it exists.

### III. CONCLUSION

The trial court's judgment is reversed. Costs of this appeal shall be assessed against the appellee, Coffee County Bank, for which execution may issue if necessary.

_____
PATRICIA J. COTTRELL, JUDGE